NORTON *v.* GRAHAM *et al.*

(In Banc. March 27, 1939. Suggestion of Error Overruled April 14, 1939.)

[187 So. 510. No. 33498.]

166

Harwell & Harwell, of Meridian, for appellant.

George B. Neville, of Meridian, for appellant.

Graham & Graham, of Meridian, for appellees.

Argued orally by **George B. Neville,** for appellant, and by **Hardy Graham** and **S. M. Graham,** for appellee.

**Ethridge, J.,** delivered the opinion of the court.

Mrs. R. P. Norton, through her attorney, filed suit against the appellees, S. M. Graham, H. M. Graham, Hollis S. Robinson, Wm. M. Robinson, Simon A. Robinson, B. L. Abrams, W. C. Abrams, A. L. Abrams, P. E. Abrams and Clarence Harper, alleging that the complainant was the sole, true and lawful owner in fee simple of the lands described in the bill, situated in Lauderdale

county, Mississippi, containing 480 acres, subject only to the rights of the Mississippi Power Company to maintain transmission lines across the lands.

It was alleged in the bill that upon assessments for taxes on the above, lawfully made in the year 1919, the tax collector, on April 5, 1920, sold the lands, after due and lawful advertisement thereof, for taxes, costs and damages, to one F. E. Richardson; and that the tax collector thereupon executed the deed of conveyance in the form prescribed by law, to the said Richardson, and filed the same with the chancery clerk of the county on April 20, 1920, the deed remaining on file with the clerk subject to payment of taxes, until April 5, 1922, thereafter being delivered to F. E. Richardson. It was alleged that the deed was thereupon filed for record in the record of deeds in Lauderdale county.

The bill alleged that the lands were subject to taxes on the 1st of February, 1919, and set forth proceedings and a chain of title from Richardson to the complainant, and the granting of the right of way to the Mississippi Power Company to construct transmission lines, etc.

The conveyance passed from Richardson to various parties, through a chain of titles, and complainant acquired the land on October 5, 1927, by a deed which was recorded, as set out in the bill. Complainant alleged that on the 24th of October, 1927, she filed an original bill in the chancery court of Lauderdale, styled ''Mrs. R. P. Norton v. Hollis S. Robinson et al. File 456-A-468,'' in which she asked the court to require all the defendants named in the suit to be made parties defendant, and that they be required to plead, answer and demur to the said bill; and that all of the said defendants were duly and legally summoned or brought into court by legal notice, final decree being rendered in the cause on January 23, 1929, confirming the title of the complainant to the said lands, and canceling and holding for naught each and every claim of all the defendants, except the right of the Mississippi Power Company as set forth. And

that the said decree confirmed and established the title of complainant. Copy of this decree was set forth in the bill, reading as follows:

"This cause coming on this day for hearing upon the bill, amendment thereto, decrees pro confesso and the answers of Hollis S. Robinson, Simon A. Robinson, William M. Robinson, A. & V. Ry. Company, Mississippi Power Company, Mose Rosenbaum, A. D. Rosenbaum and W. C. Moss, Trustee, and proof, and the same having been heard and considered, it is the opinion of the court that the complainant is entitled to the relief prayed for.

"It is therefore considered by the court so ordered, adjudged and decreed that the complainant, Mrs. R. P. Norton is the sole, true an lawful owner in fee simple of those certain lands in Lauderdale county, Mississippi, described as follows, to-wit: W½ of NW¼, Section 7, Township 6, Range 18 East; N½ of NE¼ and SW¼ of NE¼ and S½ of NW¼ and N½ of SW¼ and SW¼ of SW¼ and N½ of SE¼ of SW¼ and NW¼ of SE¼ and N½ of SW¼ of SE¼, Section 12, Township 6, Range 17 East, containing in all 480 acres more or less, subject only to the right of the Mississippi Power Company to maintain its electric transmission lines across the said lands as now constructed, and such other rights touching the said transmission line as were conveyed to the Mississippi Power Company by J. E. Bosarge on 3rd day of June, 1925, as fully set forth in the conveyance from said J. E. Bosarge to the Mississippi Power Company, bearing date of June 3rd, 1925, recorded in Deed Book 162 at page 153 in the office of the Chancery Clerk of Lauderdale county, Mississippi; and that her said title thereto in fee simple be and the same hereby is forever quieted and confirmed and that all claims of the defendants, to-wit: The Mississippi Power Company, Hollis S. Robinson, Simon A. Robinson, William M. Robinson, M. J. Harper, A. C. Snow, W. C. Moss, Trustee, Mose Rosenbaum, A. D. Rosenbaum, Alabama & Vicksburg Railway Company, J. M. Shamburger, R. W.

Charles, J. J. Shelburn, A. B. Satcher, Z. A. Moore, Mrs. A. Howard, L. Brown, Kinsey Bonney, Elizabeth Bonney, Edward S. Funkenstein, Sigmund Funkenstein, Mrs. Samuel Swartz, Mrs. Joseph Lantos, Mrs. Anton Kover, Mrs. Ignatz Tnozerleesz, Charles A. Pigford, Lee Pigford, Monroe Pigford, Mrs. Lottie Hughes, Miss Pearl Pigford, Mrs. Ella May Wilder, Edgar Spinks, Arthur Spinks, John Spinks, Mrs. Nora Hailey, Mrs. Lura Singleton, Mrs. Eva Williams, Mrs. Bertie Clarke, L. S. Pigford, and Wright Pigford and 'all persons having or claiming any interest in the following described lands sold for taxes on April 5th, 1920; W½ of NW¼ Section 7, Township 6, Range 18 East and S½ of NW¼ and W½ of NE¼ and W½ of SW¼ and NE¼ of SW¼ and N½ of SE¼ of SW¼ and N½ of SW¼ of SE¼ and NE¼ and NW¼ of SE¼ all in Section 12, Township 6, Range 17 East; Lauderdale county, Mississippi, to said land or any part thereof,' be and the same hereby are cancelled and forever held for naught, save and except only the rights of the Mississippi Power Company as set forth in the conveyance from J. E. Bosarge to the Mississippi Power Company, bearing date June 3rd, 1925 in Deed Book 162 at page 153 in the office of the Chancery Clerk of Lauderdale county, Mississippi.

"It is further ordered that the Clerk make a final record of all of the pleadings, process and decrees in this cause as provided by law, and that complainant pay all of costs herein, for which let execution issue as at law.

"Ordered, adjudged and decreed this the 23rd day of January, 1929, in open court."

It was then alleged that the said decree was legally recorded in the minutes of the court, and that all proceedings in said suit were duly and legally recorded in final record book No. 1 at pages 41 to 60, inclusive, in the office of the Chancery Clerk of Lauderdale county, Mississippi. That notwithstanding this suit and decree, the defendants herein have established the sawmill out-

fit; and since some time in November, 1937, until the present time, have been engaged in cutting, manufacturing and removing timber lying and being upon the lands; and that they have removed from the premises, in the form of logs and manufactured lumber, large quantities of merchantable timber, which they have sold. It is further alleged that the decree above mentioned was never appealed from, and that it constitutes a valid and binding decree in favor of the complainant; that the defendants, the Robinsons, have undertaken to sell to H. M. Graham, S. M. Graham, Clarence Harper, etc., rights to the timber on said lands, and continued to trespass and depredate on said property, notwithstanding the fact that they have no title, right or interest in or to it, and notwithstanding legal notice to them to cease cutting and selling the timber; and further, that complainant was unable, except through legal process, to prevent the defendant from taking timber off the land.

The complainant alleged that at the time of filing suit she did not know the exact amount of timber cut from the premises, but that she was entitled to a money decree against all of the defendants for all sums of money which they have received by reason of having cut, removed and sold timber from the premises, and asks that she be granted such decree. She also prayed for statutory penalties allowed by law, and for a decree preventing defendants from further depredations upon her lands, and to have a writ of possession awarded her, dispossessing defendants, and forever preventing them from trespassing or from any act of ownership in the property; and requested the court to grant her a temporary writ of injunction.

The defendant, S. M. Graham, disclaimed any interest in said lands, or ever having had such interest, except as an attorney, advising his clients in good faith as to their rights in the matter.

The defendants, B. L. Abrams, W. C. Abrams, A. L. Abrams and P. E. Abrams, filed an answer, admitting

that they are operating a sawmill and lumber yard in Meridian, Mississippi; and in connection therewith they buy lumber, offering same for sale, selling at wholesale; that in the regular course of business they purchased from the defendant, Clarence Harper, 173,103 feet of lumber, at $2 per thousand, amounting to $346.20, which they have learned was manufactured or cut from timber growing on the lands involved in the suit; and that the said sum, as they understood, was to be paid by Harper to the defendants, William Robinson, Simon Robinson and Hollis Robinson, and H. M. Graham, for stumpage, which they received as owners of the land; that the Robinsons were in possession of the lands, and claimed to have deeded an interest therein to H. M. Graham; that the defendants bought the lumber in good faith, relying on the representations of the parties in possession as to their title, and bought the lumber without any notice of adverse claim thereto. That as soon as attorneys for the complainant notified them of her claim, they immediately notified Harper not to deliver any more lumber manufactured from timber on the lands in question to their yard in Meridian. These defendants deny that they acted wilfully in the matter, or in collusion with any person; and deny interest or title in the lands or the timber thereon, and deny responsibility for any acts of the other defendants.

The defendant Harper admitted that he was owner of the mill, and was engaged in cutting timber for persons desiring their trees to be manufactured into lumber; that he moved his mill upon the lands described in the bill, and agreed with Simon, William and Hollis Robinson and H. M. Graham, the alleged owners of the land and timber, to saw the timber into lumber; that he had no occasion to doubt their title thereto, and understood that the interest of H. M. Graham therein was acquired from the Robinsons, who, to his knowledge, had occupied and been in possession of said land ever since he could remember, and had always claimed—long enough to have acquired

title by adverse possession; that he in good faith believed that the Robinsons, and H. M. Graham through them, had a good and perfect title to these lands. He admitted that he cut and delivered to Abrams Brothers Lumber Company, in Meridian, 173,013 feet of lumber cut from the lands here involved, before receiving any notice to the contrary; said notice was received just prior to the filing of this suit, and thereupon he ceased to cut trees on the lands; but afterwards manufactured into lumber some trees which had been cut prior to the receipt of notice. The defendant asserts that his acts were in good faith, and that he had not been wilful or negligent, and had not knowingly and intentionally violated any of complainant's rights, etc.

The defendants H. M. Graham, Hollis, William and Simon Robinson, by joint answer admitted deraignment of title from the tax deed maturing in F. E. Richardson April 5, 1922, and the institution of suit by this same complainant in this court for confirmation of her title derived through said tax deed, the suit being filed October 24, 1927, a final decree having been rendered therein in favor of complainant on January 23, 1929, as set forth in the bill herein.

The defendants further set up in the answer that title to the lands involved in the suit passed from the United States government prior to 1858, and the lands were subject to private ownership and taxation on the first day of February, 1919. They admitted that the lands were sold to the State of Mississippi for delinquent taxes on March 3, 1879, and that they passed by mesne conveyance from the State to Fred T. Robinson on February 20, 1891; that Robinson died in the year 1914, at the time of his death being the sole and lawful owner of the lands, which descended to his heirs, in whose possession they were on February 1, 1919, and also on April 5, 1920. They admit the death of Julia Robinson, wife of Fred T. Robinson, before February 1, 1919, and that she left as her sole heirs her three sons, Hollis S., Simon A. and William M. Robinson, who made answer to the complainant's

former bill for confirmation of the said tax title through their attorneys, denying therein that the complainant was in possession of the lands or any part thereof; stating that on the contrary the defendants were in possession, and have so held the lands adversely to the complainant and to all other parties whatsoever. They admit the possession of these lands by the defendants, the Robinsons, from 1891 to 1920, who continuously held and owned the lands openly, notoriously and adversely to the world since 1891, up to and including the time of the institution of this suit; and that they continued to so occupy it at the time of the filing of the answer on December 6, 1927; and it was their intention to occupy and reside thereon in the future; that the defendants, the Robinsons, claimed good and perfect title by adverse possession by reason of their having held the lands from April 5, 1922, up to the filing of the suit; and the defendant, H. M. Graham, having purchased an interest in the title from the Robinsons, claimed title through the Robinsons in their adverse possession of said lands.

The defendants allege that complainant did not institute a proceeding in ejectment, to settle both title and possession; but that she proceeded under section 402 of the Mississippi Code of 1930, in force since May 1871, whereby the legal title was vested in her; but that her failure to ask for, or procure, a writ of possession, and confirmation of the suit, and her failure ever since to acquire possession, and dispossess the Robinsons, has resulted in complainant's complete loss of whatever title was vested in her by the decree confirming the tax title; and that her title was lost on and after April 5, 1932, under and by virtue of the Statute of Limitations of more than ten years.

The defendants admit that the complainant, in January, 1936, ordered them to get off the lands, which they refused to do. Further, that in the spring of 1937 complainant's attorney conferred with attorneys for these defendants, who then advised him that the complainant had lost her title to these defendants by adverse pos-

session, and that these defendants intended to cut and sell the timber; since which date neither the defendants nor their attorneys heard anything from the complainant or her attorney, and assumed that she had realized her loss of title before they started cutting timber.

The defendants further admit that the deed to the lands in question was declared by the decree of 1929 to be valid and established in the complainant in fee simple title by the said final decree, and that there was no appeal from said decree; but deny that said decree stopped the running of the Statute of Limitations in favor of the defendants, and that at this time the complainant has any title to the lands under the tax sale, and the decree confirming it. They admit that the time for prosecuting an appeal had expired; admit cutting and removal of lumber to the extent of 173,013 feet, for which they received from Abrams Brothers the sum of $2.00 per thousand, the balance of the proceeds of the sale of the lumber going to Clarence Harper. They admit that they are now exercising acts of ownership upon the real estate described in the bill, and that they have always exercised such rights generally and continuously since 1891, and particularly since April 5, 1922, and December 6, 1927. They denied trespassing or depredating upon the land, claiming ownership thereof in themselves; and denied that complainant had any right to interfere with their use of the land, etc. And defendants prayed that their title by adverse possession be confirmed as against the complainant, Mrs. R. P. Norton, and that all relief be denied to complainant, and that her bill be dismissed; and prayed for general or special relief.

The complainant filed an answer to the cross-bill, denying adverse rights and title in the land under the Statute of Limitations.

Thereupon the case was tried on an agreed statement of facts, in which it was agreed that the complainant acquired title to the property in question in October, 1927, through the tax deed maturing in F. E. Richardson on the 5th of April, 1922, on which title complainant filed a

suit to confirm such tax title, in which suit she deraigned her title from the government down to the tax deed maturing April 5, 1922, and from the said tax deed through mesne conveyances to the time of her suit; and that on the 23rd of January, 1929, complainant procured a decree of the court confirming her tax title, and vesting good and perfect title in her; the original record in said cause being No. 456-A-468, and which was made a part of the statements of fact. It was further agreed that the defendants, William, Simon and Hollis Robinson, and Fred and Julia Robinson, both deceased, have been in open, notorious and exclusive and adverse possession of the lands in question, under claim of ownership through color of title from 1891 to the time of the filing of this suit, said color of title consisting of a deed of record in Fred Robinson, and Julia Robinson, his wife, both deceased, and William, Simon and Hollis Robinson, sole heirs of Fred and Julia Robinson, deceased, copy of which deed to Fred Robinson is of record, and made a part of the agreement. It was further agreed that should the Chancellor find for the complainant, he might immediately hear proof and ascertain the damages to which the complainant might be entitled, under the pleadings.

The record of the former suit being made part of the agreement, it appeared that the defendants therein, Hollis, Simon and William Robinson, and various other parties whose names it is unnecessary to set out herein, became parties defendant. It was alleged in the original bill, made part of the agreed statement of facts, that the complainant is the sole, true and lawful owner in fee simple of those certain lands in Lauderdale county, Mississippi, describing the lands involved in the suit; and second, that complainant's title is free and clear of every lien and encumbrance whatsoever, save and except the state and county taxes for the year 1927, and the right of the Mississippi Power Company as thereinbefore set forth; "and that your complainant is in possession thereof, and that there is no one in possession or control of

said lands, or any part thereof, adverse to your complainant.''

The complainant thereupon, in the original bill in the former suit, set forth the chain of title from the United States government and various claims of record in the county concerning said lands, and the chain of conveyances found of record in the various books thereof; and set up that certain chains of title constitute clouds upon the complainant's rights and title, the matter being set forth in minute detail, and with great particularity.

The Robinsons, defendants, answered the original bill as filed, denying complainant's claim of title in the land, denying that she was in possession thereof, and setting up that they, the Robinson defendants, were in possession of the lands, and had been since 1891; denied the validity of the tax sale, and of the proceedings under which the complainant claimed title, asserting that they were the owners in possession, and would continue in possession.

Thereafter the complainant filed a motion to amend her bill, setting out at the appropriate places the following: ''That on January 20, 1915, William M. Robinson, Hollis Robinson and Simon A. Robinson, being the owners of an undivided one-fourth interest in all of said lands conveyed the same to M. J. Stone as Trustee to secure an indebtedness in favor of F. E. Richardson, as shown by deed of trust dated January 20, 1915, and recorded in Deed Book 119, at page 546, in the office of the Chancery Clerk of Lauderdale county, Mississippi.'' And that default had been made in the payment of the debt, and that the trustees, after first having duly advertised the land for sale in the manner provided in the deed of trust and under the statutes of the State of Mississippi, sold same, when W. L. Parker became the purchaser thereof for the sum of $517.50, and the lands were conveyed to him, as shown by a deed dated May 6, 1920, recorded in Deed Book 129, at page 235, in the office of the Chancery Clerk of Lauderdale county, Mississippi. Thereafter, on January 20, 1927, W. L. Parker

sold and conveyed his interest in the said lands to the Strauss Investment Company by a deed dated the same day, and recorded in Deed Book 168, at page 113, in the office of the Chancery Clerk. It was alleged that thereafter the interest in said lands passed to the complainant, as shown by paragraphs "i," "j" and "k" in the chain of title set forth in the bill.

The complainant, in the original suit, caused summons and publication to be made for many of the defendants, and took a decree of pro confesso against numerous defendants whose titles had been set forth in the bill, and many other defendants disclaimed any right, title or interest in the said lands. In other words, all the defendants in the original bill, except the Robinson defendants, either defaulted in defending the suit, or disclaimed any interest in the lands; and the decree, as above stated, was rendered in the original suit, in which the title was not only confirmed, and Mrs. Norton, the complainant adjudged to be the sole, true and lawful owner in fee simple of the lands described in the decree; and that her title thereto "in fee simple be and the same herby is forever quited and confirmed. That all claims of the defendants, to-wit: the Mississippi Power Company, Hollis S. Robinson, Simon A. Robinson, William M. Robinson," and other defendants named in the bill, and all persons having or claiming any interest to the lands (describing the lands) "be and the same are hereby cancelled and forever held for naught, save, and except only the rights of the Mississippi Power Company as set forth in the conveyance from J. E. Bosarge to the Mississippi Power Company," dated June 3, 1925, and recorded in Deed Book 162, at page 153, in the office of the Chancery Clerk of Lauderdale county. And the decree ordered the final record to be made of the pleadings, process and decree in the cause as provided by law, which decree was signed on January 23, 1929.

It will be noted from the recitals of the decree that it not only confirmed title in the complainant generally, but that it specifically cancelled all claims, etc., of de-

fendants to the said bill, including the defendants, the Robinsons, herein. It will also be noted that by the amendment above set forth the complainant not only asserted title to the land by virtue of the tax title acquired at the sale in 1920, which matured April 5, 1922; but also set up the deed of trust and its foreclosure, and the acquirement of that title by mesne conveyance.

The Chancellor below dismissed the bill of complaint, rendering an opinion based upon Bell v. Coats, 56 Miss. 776, which decision was rendered prior to the time when the Chancery Court had any legal power to decree possession, compensation for use and occupation, rents, etc.

It is argued here that by virtue of the agreement of facts it was agreed in the present suit that the defendants, the Robinsons, had been in open, notorious, exclusive and adverse possession of the said lands under claim of ownerhip through color of title, from 1891 up to the time of the filing of the suit now pending, the color of title constituting deed of record in Fred R. and Julia Robinson, both deceased, and William, Simon and Hollis Robinson, the sole heirs at law of the said Fred and Julia Robinson, made a part of the record, and that the agreement that the complainant in this suit acquired title to the property in question in 1927, by tax sale deed on April 5, 1922, on which title complainant filed suit in 1927 in the court, to confirm title, in which suit she deraigned title from the government down to the tax deed maturing on April 5, 1922, and from said tax deed through mesne conveyances to the conveyances she held at the time of her suit. The facts further show that on January 23, 1929, complainant procured a decree confirming the tax title, and vesting title in the complainant thereby, and that the original record in said cause, being No. 456-A-468, is admitted as part of the record of this agreement of facts, cuts off, it is claimed, the complainant from claiming to proceed now on a general confirmation suit, and that she could not now set up anything but a tax title proceeding as the foundation of this suit.

We think that the original record and proceeding, including process and decrees, is as much part of the agreed statement of facts as are specific matters referred to. The agreed statement of facts must be considered as a whole, and be so interpreted, and if there is any inconsistency between the preliminary part preceding the former record, that record being the proceeding in the Chancery Court, must control. In other words, the entire record in the former suit shows that the complainant claimed to be in possession, and claimed there was no adverse possession; and the answer in the former suit denied her being in possession, denied the allegation that there was no adverse possession, and asserted adverse possession; and the amended bill, showing not only tax title as the foundation of title, but also the deed of trust from the Robinsons, with foreclosure thereof, as another source of title, brings the suit here involved into the class of a general unit to confirm title under section 403, Code of 1930; and the allegations of the bill as to the title set out in the original bill, as constituting a cloud upon the complainant's title, makes it also a suit to cancel clouds, under section 404, Code of 1930, as well as a suit to confirm.

It is true that the prayer for relief in the original bill did not specifically pray for a cancellation of the various titles set out in the deraignment of title, and the various claims set out; but the bill did assert the existence of such title, and that the certain chain of title constituted a cloud thereon, and prayed for general relief.

A prayer for general relief authorizes the court to grant any appropriate relief shown by the allegations of the bill, and warranted by the case made. Griffith's Mississippi Chancery Practice, sections 186, 187. In section 186 thereof it is said: ''In addition to the special prayer, the complainant should never omit to include a prayer for general relief, for under a prayer for general relief the court will extend to the complainant such redress as will be agreeable to the case made out by the bill whether or not specially mentioned or prayed in the bill, and es-

pecially so if it will not cause surprise or prejudice to the defendant. Under the prayer for general relief the complainant may have any other relief than that specifically prayed if it be within the scope of the facts of the bill, and not inconsistent with the purpose of the bill, and which cannot be said to surprise the defendant. It was formerly the rule that no relief could be granted under the general prayer which was inconsistent with that specifically prayed. In our modern practice the rule is more liberal, and under the general prayer any relief consistent with the bill and within its scope may be afforded, though it be inconsistent with the specific relief prayed. But the relief must yet be such as can be afforded on the facts stated, and it must appear that the defendant is fairly apprised by the bill that the relief is sought by the complainant.''

The bill in this case stated facts which not only showed the complainant's right to confirm her title on the tax sale, but also her right to have her title adjudged on the deed of trust and trustee's sale and mesne conveyances, and to have title set out in the bill constituting a cloud upon the complainant's title held for naught, all of which relief the court granted. All controversial facts depending upon proof in the former suit are precluded by that suit, and foreclosed from further inquiry. The matters existing at the time of that suit under sections 403 and 404 of the Code of 1930 conclude the title as of the date of the decree, and not as of the date of the tax sale in 1922.

The allegations that the complainant was in possession, and that there was no adverse possession against her right in the former suit, having been put in issue in the former suit by the pleadings in that suit, are concluded thereby, and the effect of that decree is not destroyed, but is supported by the agreed statement of facts, taken as a whole. On this record it is not necessary to determine whether or not, since the Chancery Court is by law now given the power to decree possession, and to issue writs of possession, whether the ruling in Bell

v. Coats, 56 Miss. 776, 778, would still be the rule if the suit were one merely to confirm a tax title; or whether, under present powers, the practice in all matters which properly might be litigated, are concluded by the decree, whether litigated or not, would operate to change the rule under the present power of the court to decree possession, rents, etc., and to allow amendments at any time before the decree, to bring the litigable matters properly before the court.

The judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.

**Anderson, J.**, delivered a dissenting opinion.

This case may be illustrated in a few words: A is the true and legal owner of a piece of land by virtue of a tax title. B is in the open, notorious, adverse possession of the land claiming paper title thereto, as well as title by adverse possession. A files his bill to confirm his tax title, and, in addition, to cancel as clouds upon his title B's claim, as well as that of all others. In his bill he neither alleged right of possession in himself, nor prayed for possession. B, in his answer, denied A's title and asserted both his claim of paper title and title by adverse possession for more than ten years, under Section 2287, Code of 1930. The trial resulted in a decree confirming A's tax title and cancelling B's claim of title, as well as that of the other defendants, leaving B's possession undisturbed. At the time the decree was rendered B's adverse possession had been going on for about seven years from the date of the maturity of A's tax title, and continued for more than ten years from such maturity before A filed his bill in the present case. A thereupon filed this bill to cancel B's claim as a cloud upon his title and for possession. B answered setting up that he had title by adverse possession; that he had been in the open, notorious, adverse possession claiming title from the maturity of A's tax title until the filing

of the bill, which had been more than ten years. The chancellor found, and was justified in so finding, that B's answer as to adverse possession was sustained by the evidence. The controlling opinion does not hold to the contrary. The question is whether the running of the ten-year Statute of Limitations was stopped by the decree in the first case. It is true that under Section 406, Code of 1930, possession could have been claimed and awarded in that case, but, as stated, no such claim or award was made. The cancellation of B's claim of title could have had no reference to his adverse possession; his adverse possession amounted to nothing. Its cancellation, therefore, would have been a vain thing. It was not involved. In its last analysis the question is whether the decree in the first case, was res judicata of B's claim of title by adverse possession up to that time. The estoppel of a judgment extends only to the questions directly involved, not to any incidental or collateral matter, although such might have arisen and been passed on. Land v. Keirn, 52 Miss. 341; Thompson v. Hill, 152 Miss. 390, 119 So. 320; True-Hixon Lumber Co. v. Thorne, 171 Miss. 783, 158 So. 909.

A in the first suit could have stopped B's adverse possession, but chose not to do it. Bell v. Coats, 56 Miss. 776, is directly in point on principle. The only difference in that case and this is that under the law, as it existed then, the complainant could not have asked for and had possession awarded him. The Court held in that case that the running of the statute of limitations in favor of one in adverse possession of the land claiming title thereto was not stopped by the filing of a bill by the true owner to confirm his tax title, to which proceeding the person in adverse possession was made a party. In that case as in this the Court cancelled the defendant's claim of title.

The only way the Court could have stopped the adverse possession in the first case would have been to take it away from B and award it to A. This was neither done nor asked to be done. It is conceviable that when the first bill was filed, notwithstanding A was the true

owner, he was not entitled to the possession; that the right of possession might have been temporarily in someone else.

ON SUGGESTION OF ERROR.

**Per Curiam**:—Suggestion of error overruled.

**McGehee, J.**, delivered a dissenting opinion on suggestion of error.

The lands involved in this suit were sold for taxes on April 5, 1920, to F. E. Richardson. They were not redeemed from the sale. The tax title thus acquired by Richardson passed by mesne conveyance to the appellant, she having become the purchaser thereof in October, 1927. In the meantime, the appellees, Hollis S. Robinson, William M. Robinson and Simon E. Robinson, who owned the land at the time of the tax sale, as heirs at law of Fred T. Robinson, deceased, continued in the actual possession and occupancy of the land, claiming it adversely to the tax title and to all conveyances executed subsequent thereto. The appellant brought suit shortly after her acquisition of the tax title, formerly owned by Richardson, to confirm the same and to cancel the claims of the Robinsons as well as those of any and all other persons having any claim or interest in the land, as clouds upon her title, and was granted a decree accordingly; but she failed to obtain a writ of possession, as she may have done, and also failed to thereafter take any steps to disturb the adverse possession and occupancy of the Robinsons until after more than ten years from the maturity of the tax title. Then, she brought the present suit, which was tried upon an agreed statement of facts, wherein it was stated in substance that she had become the owner of the tax title in October 1927, and that her title had been confirmed and quieted by a decree rendered in January 1929, which was unappealed from, and whereby she was vested with a good and perfect title to the land, but it was further stipulated in this agreed statement of facts that the Robinsons have

been in the open, notorious, exclusive and adverse possession of the land under claim of ownership through color of title from the year 1891 to the time of the filing of the present suit. The proceedings in the former suit were made an exhibit to and a part of the agreed statement of facts, and the former bill of complaint, filed in 1927 as aforesaid, alleges that the complainant therein was at that time in possession of the land. However, the decree rendered thereon in 1929 contains no express finding as to who was then in possession. No writ of possession was asked for or obtained by the complainant in that suit, and neither was there any change in the adverse possession and occupancy then in fact held by the Robinsons in so far as the agreed statement of facts in the present suit is concerned, as will appear from the express recitals thereof hereinabove mentioned, the appellant having solemnly agreed as aforesaid that the Robinsons have been in the open, notorious, exclusive and adverse possession under claim of ownership through color of title continuously since the tax sale, and prior thereto.

The rule to the effect that an exhibit to a pleading controls when in conflict with the allegatoins of the pleading should have no application to an exhibit to an agreed statement of facts, which agreement is to be considered in its entirety, since in the former instance a statement in a pleading is a mere allegation of one of the parties which must yield to the recitals of an exhibit thereto upon which the pleader may seek to recover; while in the latter instance an agreed statement of facts when presented to the court represents the agreement of both of the parties and should control as against some formal allegation found in a pleading contained in voluminous court proceedings made an exhibit thereto, and on which allegation no express adjudication has been made; and this is especially true where upon the trial the parties recognize the fact that the allegation in the former pleading is not true. Moreover, the issue in the present suit, and the only issue, is assumed by both parties to be

whether or not the adverse possession of the Robinsons from the maturity of the tax sale in 1922 until the decree of 1929 confirming the same can be included in reckoning the ten years adverse possession held by the Robinsons up to the date of the filing of the present suit.

At any rate, the chancellor was at least entitled to look to the entire agreed statement of facts in ascertaining the intention of the parties as to the facts upon which the case was being tried, even though there was a conflict between the express stipulations made therein at the time of the trial of the present suit and some allegation of a former pleading made an exhibit thereto.

Considering the case in the light of the issue thus made, it will be found that in the case of Bell v. Coats, 56 Miss. 776, the Court expressly held that the period of adverse possession of a former owner from the time of the maturity of the tax sale until the rendition of a decree of confirmation thereof, which also cancelled the defendant's claim to the land, could be coupled to such possession retained by the defendant subsequent to such decree, where the complainant in such suit failed to resort to ejectment (as he was then required to do under the law to obtain possession) and to thereby interrupt defendant's occupancy and possession before the expiration of the statutory period following the maturity of the tax title. The rule thus announced in Bell v. Coats, supra, has been neither changed by statute nor by judicial construction so far as I have been able to ascertain. In fact, the appellant concedes that the precise question here involved (that is to say, where the former suit not only sought to confirm the tax title, as in the case of Bell v. Coats, supra, but also asked a general confirmation and quieting of title by the cancellation of claims as clouds thereon, as in the case at bar) has not been decided by this Court so as to announce any different rule as to coupling a period of adverse possession existing before and one accruing after decree of confirmation than that announced in that case; and also concedes that the authorities in other jurisdictions are in conflict on this ques-

tion. However, I am of the opinion that Section 2287 of the Code of 1930 settles the question here involved in favor of the appellees by providing that: ''Ten years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten years by occupancy, descent, conveyance, or otherwise, in whatever way such occupany may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title, saving to persons under the disability of minority of unsoundness of mind . . .'' etc. In other words, the statute contains its only exceptions. There are none other, and it seems to me that it would avail one, who is admittedly the owner of the legal title, nothing to have his title confirmed every year during the ten-year period, or to have clouds thereon cancelled, if he permits an adverse occupant and claimant of the land to remain in possession continuously during such ten-year period. The confirmation of appellant's title and the cancellation of adverse claims thereto in 1929 merely established the title as against the Robinsons that she already had, they having been in adverse possession only approximately seven years between the maturity of the said valid tax title and the rendition of such decree. Their claim of adverse possession, although not expressly cancelled by that former decree, was impliedly cancelled for the reason that it had not at that time ripened into a good title under the statute above mentioned. But in my opinion there is a difference between cancelling a claim of title to land based on adverse possession, because of the then insufficiency of the period of its duration, and in breaking the continuity of such possession. By their answer in that suit, the Robinsons averred that they were then in adverse possession of the land and that they intended to so remain. The appellant here, as complainant in that case, could have thereupon amended her bill and asked for a writ of possession in order to dispossess them of the land following the decree of confirmation. She did not do this, but permitted their possession and occupancy to

continue adverse for the statutory period, including their prior occupancy. The owner of a legal or equitable title, or both, when clouds are cancelled and the title is confirmed and quieted, as against an adverse occupant, is afforded an ample remedy of obtaining and having executed a writ of possession in the same proceeding, or by a writ of ejectment at law, and such other remedial writs as are provided by law, as the only means of preventing a title by adverse possession being acquired against him. I know of no statute or decision declaring that it can be done by the entry of a decree which remains unexecuted. Moreover, I am unable to see any distinction between Bell v. Coats, supra, and the present case so far as the principle involved in each of the two cases is concerned.

**Anderson, J.,** concurs in this dissent from the action of the court in overruling the suggestion of error.