## OGDEN CITY v. LEO.

No. 3352.   Decided June 26, 1919.   (182 Pac. 530.)

1. INNKEEPERS—POLICE POWER—POWER TO REGULATE RESTAURANTS. In view of Comp. Laws 1917, section 570x38, conferring power upon cities to license, tax, and regulate restaurants, hotels, etc., and section 570x87, authorizing cities to pass ordinances necessary to preserve the morals, etc., a city is not without power to pass an ordinance reasonably regulating the business of conducting restaurants.   (Page 560.)

2. MUNICIPAL CORPORATIONS—REGULATION OF OCCUPATIONS—"REGU-
LATE"—MEANING. The power of a city to "regulate" a particular
calling or business as conferred by statute (Comp. Laws 1917,
section 570x38) implies the right to prescribe and enforce all
such proper and reasonable rules and regulations as may be
deemed necessary and wholesome in conducting such business
in a proper and orderly manner (citing Words and Phrases,
First and Second Series, Regulate.)   (Page 560.)

3. MUNICIPAL CORPORATIONS—POLICE POWER—REGULATION OF BUSI-
NESS—REASONABLENESS. An ordinance regulating a business
must be reasonable, and its provisions cannot be oppressive nor
an arbitrary interference with the business or calling which is
regulated.   (Page 562.)

4. INNKEEPERS—POLICE POWER—REGULATION OF RESTAURANTS—REA-
SONABLENESS. An ordinance prohibiting the maintenance of
booths exceeding certain specified dimensions in restaurants
and public eating places, being designed to prevent persons in-
clined to violate both law and good morals from gathering in
such places, is not an unreasonable interference with a legitimate
business.   (Page 562.)

5. MUNICIPAL CORPORATIONS—ORDINANCES—VALIDITY—PRESUMPTION.
Where there is nothing on the face of an ordinance regulating
the size of booths in restaurants to show it is unreasonable,
that it is unwarranted interference with a proper business, or
that the conditions in the city are not such as to require regu-
lation, it will be presumed that the city authorities were war-
ranted in passing the ordinance.   (Page 562.)

Appeal from District Court, Second District, Weber Coun-
ty; *A. E. Pratt*, Judge.

John Doe Leo was convicted of violating a certain ordi-
nance of Ogden City, a municipal corporation, regulating res-
taurants or public eating places, and appeals.

AFFIRMED.

*A. G. Horn* and *George Halverson*, both of Ogden, for ap-
pellant.

*W. H. Reeder, Jr.*, and *D. L. Stine*, both of Ogden, for
respondent.

FRICK, J.

The defendant was charged with and convicted of violating a certain ordinance of Ogden City regulating restaurants or public eating places, and appeals.

The part of the ordinance which is in question here reads as follows:

"It shall be unlawful for any person, firm or corporation to keep, maintain, or operate any such public eating or drinking place containing in the public eating or drinking room or hall thereof any booths or stalls constructed by means of or by the use of partitions, curtains or screens which shall be higher than three feet six inches from the surface of the floor of such room or hall provided that on any mezzanine, or higher floor, or platform of such public dining or drinking room or hall, and wholly within such room or hall, enclosed by the walls and ceiling, it shall be unlawful to keep or maintain any such booth or stall of any height, kind or description.

"To improve the morals, peace and good order of the inhabitants of Ogden City it is deemed necessary by the board of commissioners thereof that this ordinance be passed and become effective immediately."

The facts disclosed by the record are very brief. The defendant owns and conducts a public eating place under the name of "Alhambra Café." The room in which the business is conducted is approximtaely one hundred and ten feet in length north and south and about twenty-five feet wide east and west. In the front part of the room there is an open space of about twenty-five by twenty-five feet, on one side of which are four tables with four chairs to each table and on the other side two tables with chairs and a desk in front of the two tables. Immediately back of this open space the defendant maintains what are called "booths," of which there are four along the east wall or side of the room and four along the west side with an alleyway between the booths six feet in width. The walls of these booths are made of thin boards seven feet high, and the booths are seven feet square with a doorway three feet six inches wide leading from the alleyway aforesaid into each booth. These booths, eight in number, therefore, constitute eight private rooms or compartments; each room having a table and four chairs.

The validity of the ordinance prohibiting the maintenance

of such booths is assailed upon two grounds: (1) That Ogden City exceeded the power conferred upon it by the statute in adopting the ordinance; and (2) that the ordinance is unreasonably oppressive and constitutes an undue interference with a legitimate and lawful business, and is for that reason void. In support of their contention, counsel for defendant have cited the following cases: *Bennett* v. *Pulaski*, (Tenn. Ch. App.) 52 S. W. 913, 47 L. R. A. 278; *Champer* v. *Greencastle*, 138 Ind. 339, 35 N. E. 14, 24 L. R. A. 768, 46 Am St. Rep. 390; *Long* v. *Tax District*, 75 Tenn. (7 Lea) 133, 40 Am. Rep. 55; *Yee Gee* v. *San Francisco* (D. C.) 235 Fed. 757; *People* v. *Chicago*, 261 Ill. 16, 103 N. E. 609, 49 L. R. A. (N. S.) 438, Ann. Cas. 1915A, 292; *People* v. *Oak Park*, 268 Ill. 256, 109 N. E. 11; *State* v. *Ashbrook*, 154 Mo. 375, 55 S. W. 627, 48 L. R. A. 265, 77 Am. St. Rep. 765. While in some of the foregoing cases it is held that the municipality was without authority to pass the ordinances there in question, yet the holding are all under statutes different from ours, and the regulations and restrictions there imposed were of quite a different nature. We shall hereinafter more fully consider some of the foregoing cases.

Referring now to our statute, we find that Comp. Laws Utah 1917, section 570x38, among other things, expressly confers power upon all the cities of this state to "license, tax and regulate * * * restaurants, hotels, taverns, theaters, opera houses, music halls, boarding houses, eating houses, chop houses, lodging houses," etc. The statute (570x87) further authorizes all cities to "pass all ordinances and rules, and make all regulations, not repugnant to law, necessary for carrying into effect or discharging all powers and duties conferred by this chapter, and such as are necessary and proper to provide for the safety, and preserve the health, and promote the prosperity, improve the morals, peace, and good order, comfort, and convenience of the city and the inhabitants thereof," etc. The statute thus confers ample power upon cities to make all reasonable and proper regulations of the various business enterprises mentioned in the statute. Notwithstanding the foregoing provisions, counsel for defendant

contend that all that Ogden City is empowered to do by virtue of the foregoing provisions is merely to "require the parties engaged in a business to take out a license and regulate its collection." In our judgment such is not the usual and ordinary meaning given to the term "to regulate" by the courts. A large number of adjudications of the phrase "to regulate" are given in 4 Words and Phrases, second series, 234, among which are the following:

"'To regulate' means to adjust by rule, method, or established mode; to subject to governing principles or laws."

Again:

"'To regulate' means to prescribe the manner in which a thing licensed may be conducted; a license itself being the permit or authority to conduct and carry on."

Another:

"While the word 'regulate' has been given a comprehensive meaning and construed to signify both government and restriction, thereby including in an act all subjects germane to the subject named, it does not so much imply creating a new thing as arranging in proper order and controlling that which already exists."

The foregoing illustrations are quite sufficient to show that, where the power "to regulate" a particular calling or business is conferred on a city, it authorizes such city 1, 2 to prescribe and enforce all such proper and reasonable rules and regulations as may be deemed necessary and wholesome in conducting the business in a proper and orderly manner. To "regulate" therefore implies the right to prescribe rules and regulations for the conduct of the business regulated. The statute, in authorizing the cities of this state to regulate restaurants and eating houses, therefore, conferred the power upon Ogden City to pass reasonable ordinances regulating such enterprises. The contention that Ogden City was without authority to pass an ordinance regulating the business of conducting restaurants or eating houses must therefore fail.

This brings us to the second assignment, namely, is the ordinance in question invalid upon the ground of being oppressive or an unreasonable interference with a legitimate business enterprise? While it is true that a business may be regulated,

it is equally true that such regulation must be within the bounds of reason; that is, the regulatory ordinance must be reasonable, and its provisions cannot be oppressive and a mere arbitrary interference with the business or calling which is regulated. A lawful business or calling may not, under the guise of regulation, be unreasonably interfered with even by the exercise of the police power. The question therefore is: Is the ordinance in question, in prohibiting the maintenance of booths as therein set forth, an unreasonable interference with defendant's business? The record is entirely devoid of anything from which we can judge or determine the condition prevailing in Ogden City which may have induced the city authorities to pass the ordinance in question. In that regard counsel have not taken us into their confidence, except the statements made at the oral argument, and therefore all we judicially know is what is disclosed in the ordinance itself and what counsel have seen fit to tell us. In the absence of facts to the contrary, we must assume that the city authorities were warranted in passing the ordinance. The general rule in that regard is well stated by the annotator in the notes to the case of *State* v. *Atchison,* reported in 92 Kan. 431, 140 Pac. 873, Ann. Cas. 1916B, at page 504, where it is said:

"It is generally presumed that conditions exist which make ordinances necessary or proper for the welfare of the community."

A large number of cases from numerous jurisdictions are cited in support of the text to which we shall not specially refer here. The same thought is expressed in another form in *Seattle* v. *Hurst,* 50 Wash. 424, 97 Pac. 454, 18 L. R. A. (N. S.) 169, where the following language is adopted from Horr and Bemis, Municipal Police Ordinances, section 127:

"An ordinance to be void for unreasonableness must be plainly and clearly unreasonable. There must be evidence of weight that it took inception either in a mistake, or in a spirit of fraud or wantonness on the part of the enacting body."

To the same effect are *Sandys* v. *Williams,* 46 Or. 327, 80 Pac. 642; *Pate* v. *City of Jonesboro,* 75 Ark. 276, 87 S. W. 437, 112 Am. St. Rep. 55, 5 Ann. Cas. 381; *State* v. *Barge,* 82 Minn. 256, 84 N. W. 915, 53 L. R. A. 428; and numerous cases

cited in those cases. ' Indeed, the case of *Pate* v. *City of Jonesboro,* cited above, is quite analogous to the case at bar, and in that case the ordinance was sustained.

We therefore are required to presume that the local conditions in Ogden City are such as to justify the city authorities to regulate the conduct of restaurants or **3-5** eating houses in the manner prescribed in the ordinance. The ordinance certainly is not such that we can as matter of law declare that upon its face it is unreasonably oppressive or that it constitutes an unreasonable and unwarranted interference with the conduct of the restaurant business upon the one hand, nor, upon the other, that under no circumstances can the prevailing conditions in Ogden City be such as to require the regulation prescribed in the ordinance. Every presumption, as we have pointed out, is in favor of the validity of the ordinance. Unless, therefore, the regulation prescribed in the ordinance is manifestly oppressive or necessarily constitutes an unreasonable and unwarranted interference with defendant's business under any possible view that can be taken of the local situation, we must uphold the ordinance. We confess our entire inability to discover anything in the ordinance that is unreasonably oppressive or which constitutes an undue interference with the business of con ducting a restaurant. We have a right to assume that the purpose of the ordinance is merely to prevent persons of both sexes who have regard for neither the law nor good morals from meeting at late and unusual hours of the night and entering those booths where they can avoid detection and can indulge their propensities for violating both the law and good morals. It certainly cannot be said that law-abiding persons and all those who frequent restaurants and public eating places only for the purpose of obtaining refreshments desire seclusion from the eyes of others who may also be in the place for the same purpose. We know, as all men know, that the best and largest dining rooms everywhere are open and that the respectable and law-abiding men and women do not seek closed booths or dark rooms when they go to a public eating place to eat their meals. The fact that an ordinance

like the one in question here was deemed necessary to regulate public eating places is no reflection either upon the good morals or the law-abiding propensities of the good people of Ogden. It reflects credit upon the city authorities rather than discredit. Similar ordinances might well be adopted and enforced in any city of the size of Ogden. There is nothing to the contrary to what we here hold in any of the cases cited by defendant's counsel. The principle announced in the case of *Yee Gee* v. *City of San Francisco* (D. C.) 235 Fed. 753, has no application here. In that case the city of San Francisco prohibited all work in laundries between the hours of 6 o'clock p. m. and 7 o'clock the following morning. The ordinance was held invalid by the federal court upon the ground that it applied to all parts of the city of San Francisco without regard to conditions or surroundings, and that it was in fact an attempt to regulate the hours of labor and not the business. Any one with but slight reflection would readily understand that the purpose of the ordinance was merely to prevent small laundries from carrying on their business at hours different from those establishments which employed a large number of hands all of whom could generally be governed by union hours. It therefore is easy to perceive why the court refused to uphold the ordinance. The other cases illustrate interferences not authorized by the statute. There is nothing of the kind in this state. What is sought to be done and what is done by the ordinance in question here is to regulate the conduct of the business and to prevent the concealment of evilly disposed persons under the guise that they are merely "taking their meals." We can discover no reason for holding that the ordinance in question is invalid.

For the reasons stated, the judgment of the district court is affirmed; respondent to recover costs of printing its brief.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.