## SALT LAKE CITY v. REVENE.

No. 6330.   Decided April 17, 1942.   (124 P. 2d 537.)

See 37 Am. Jur., 620; 43 C. J. Municipal Corporations, sec. 347.

*Gerald Irvine, A. Pratt Kesler, E. R. Christensen,* and *Clarence M. Beck,* all of Salt Lake City, for appellant.

*Clifford L. Ashton,* of Salt Lake City, for respondent.

WOLFE, Justice.

Appeal from the District Court to determine the validity of a Salt Lake City ordinance.

Defendant, Andrew Revene, was charged with the violation of a city ordinance on May 18, 1937. There is no dispute as to the facts of this case. The defendant, operator of a barbershop at 266 East 2nd South Street in Salt Lake City, Utah, remained open for the purpose of barbering after the hours for closing designated by the city ordinance.

The lower court sustained a demurrer to the complaint, and plaintiff appeals.

The pertinent sections of the ordinance in dispute read as follows:

"Section 269. Closing of Barber Shops. It shall be unlawful for the owner or operator of any barber shop or for any agent or employee of such owner or operator or any barber shop in Salt Lake City to permit such barber shop to be or remain open for the business of barbering for a consideration, or otherwise, on Sundays, Thanksgiving Day, Christmas Day, New Year's Day, Washington's Birthday, Decoration Day, July 4th, July 24th, or Labor Day or at any time other than the following:

"From 8 o'clock A. M. to 6 o'clock P. M. on week days except Saturdays when such days do not precede any legal holiday.

"From 8 o'clock A. M. to 7 o'clock P. M. on Saturdays, and on any week day when such week day precedes any legal holiday.

"Except during business hours hereinabove defined, every barber shop shall be closed and it shall be unlawful for any person operating a barber shop to prevent a free and unobstructed view of such barber shop by any method, or by the use of blinds, shades, screens, painted or frosted glass, or any such other device.

"Section 2. In the opinion of the Board of Commissioners, it is necessary to the health, peace and safety of the inhabitants of Salt Lake City that this ordinance become effective immediately."

The plaintiff city maintains that such an ordinance is valid under the police power granted it by the Legislature by Sections 15-8-39, 15-8-84, and 15-8-61, reading as follows:

"15-8-39. License of Certain Businesses. They [cities] may license, tax and regulate * * * barber shops."

"15-8-84. Ordinances—Punishment. They [cities] may pass all ordinances and rules, and make all regulations, not repugnant to law, necessary for carrying into effect or discharging all powers and duties conferred by this chapter, and such as are necessary and proper to provide for the *safety* and *preserve the health* and promote the

prosperity, improve the morals, peace and good order, comfort and convenience of the city and the inhabitants thereof, and for the protection of property therein; and may enforce obedience to such ordinances with such fines or penalties as they may deem proper;" etc. (Italics added.)

"15-8-61. Contagion, Infection, Quarantine, Garbage. They [cities] may make regulations to secure the general health of the city, prevent the introduction of contagious, infectious or malignant diseases into the city, and make quarantine laws and enforce the same within the corporate limits and within twelve miles thereof," etc.

It is plaintiff's position that the above ordinance regulating the hours of a barber shop is a valid exercise of the police power delegated by the Legislature to the city to "regulate" for the safety and preservation of health of the community. The plaintiff introduced evidence taken at a previous time in the form of testimony by barbers and health officials to the effect that a "tired barbed was a negligent barber," tending to afford an opportunity for the spread of diseases associated with the profession. Further, that from an administrative standpoint it was impossible to inspect a barber shop after 6 o'clock P. M.

Defendant contends that the "ordinance in question is an invalid exercise of the delegated power to license, tax and regulate barber shops" and that it is unconstitutional as a direct contravention of the due process clauses of the State and Federal Constitutions.

It has been repeatedly stated by this court ■

"that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient, but indispensable." 1 Dillon Municipal Corporations, 5th Ed., p. 448, § 237; *Walton* v. *Tracy Loan & Trust Co.*, 97 Utah 249, 92 P. 2d 724; *Salt Lake City* v. *Kusse*, 97 Utah 113, 93 P. 2d 671; *American Petroleum Co.* v. *Ogden City*, 90 Utah 465, 62 P. 2d 557; *Utah Rapid Transit Co.* v. *Ogden City*, 89 Utah 546, 58 P. 2d 1; *Wadsworth* v. *Santaquin City*, 83 Utah 321, 28 P. 2d 161; *Salt Lake City*

v. *Sutter*, 61 Utah 533, 216 P. 234; *City of Ogden City* v. *Bear Lake & River, etc., Co.*, 16 Utah 440, 52 P. 697, 41 L. R. A. 305; 37 Am. Jur. 722.

The municipality being a creature of the state with delegated powers, the question arising here is whether this ordinance is within the police power delegated under Section 15-8-39; to "license, tax and regulate."

The word "regulate" is difficult to define in other terms because it involves a conception for which it stands more accurately than any synonym. It involves the making of a rule in reference to the subject to be regulated. Webster's International Dictionary, (2nd Edition), de- ▮▮ ▮▮▮▮▮ the word to mean "to bring under the control of law or constituted authority. To make regulations [rules] for or concerning." The rule making power given to cities in reference to barber shops does not mean any rule but such rules reasonably related and designed to protect the health of the public.

In *Ogden City* v. *Leo,* 54 Utah 556, 182 P. 530, 532, 5 A. L. R. 960, this court after defining regulation, said,

"the foregoing illustrations are quite sufficient to show that, where the power 'to regulate' a particular calling or business is conferred on a city, it authorizes such city to prescribe and enforce all such proper and reasonable rules and regulations as may be deemed necessary and wholesome in conducting the business in a proper and orderly manner."

The question resolves itself to this: It the fixing of closing hours a reasonable regulation within the scope of the delegated police power, i. e. has it a reasonable relationship to the protection of health of the public?

It is said that when shops are open long hours the operators tire and that a "tired barber is a negligent barber." A tired barber may be a careless barber but it does not follow that all shops which remain open more than a certain number of hours engage the same barbers throughout the entire period. Barbers can work in shifts. If the object of

the law was to prevent barbers from getting tired the simple way would have been for the legislature to have given power to regulate the working hours of barbers in shops rather than the hours of barbershops. If limiting the hours of barbers is encompassed within the phrases "regulate barbershops" the city would need no other power from the legislature than it now has to do that. If the purpose of the ordinance was to limit the working hours of the operators, granted that could be done, the method was too indirect and accomplished far wider results than mere limitation of working hours. *Knight, Chief of Police,* v. *Johns,* 161 Miss. 519, 137 So. 509, at page 510.

The argument that limiting the hours of barbershops tends to cut down the number of hours they must be policed and thus is a reasonable administrative measure to aid in their regulation, is more tenable. It would seem that all establishments where human beings must repair for work to be done on their person might require frequent inspection to see that they were kept clean and neat. Section 35-1-13, R. S. U., 1933, evidently had such inspections in mind "during business hours." Naturally if business hours could be limited to fixed hours it would, in time, cut down the hours not only when they could be inspected but the period during which a proper standard of cleanliness must be maintained therein and consequently the periods when the inspectors would be required to keep them up to standard. The fact that actually there was only infrequent inspection of barbershops cannot itself affect the fact that ordinarily the less hours a place need be policed the less onerous are the duties of policing. Be that as it may, the cases seem to be universally against the contention that limiting hours comes within a power to regulate for the purpose of protecting the health of the public. This distinction between a power given to the city to regulate opening and closing of barbershops and a power to regulate the business of barbers was made in *State ex rel. Newman* v. *City of Laramie,* 40 Wyo. 74, 275 P. 106, 107.

In *Ganley* v. *Claeys*, 2 Cal. 2d 266, 40 P. 2d 817, an ordinance like the one here involved was declared beyond the powers of the city although the distinction there made between the powers of the city although the distinction there made between the case at bar and *In re Lowenthal*, 92 Cal. App. 200, 267 P. 886 and *In re Gatsios* (*Ex Parte Hennessy*), 95 Cal. App. 762, 273 P. 826, which pertained to butcher shops appears to be made on not too convincing grounds.

In *Knight, Chief of Police,* v. *Johns,* supra [161 Miss. 519, 137 So. 510], it was said:

"As we understand the argument, the necessity for the barber shop closing ordinance arises because of inconvenience to the city's inspectors of inspecting such shops during the hours the ordinance requires them to be closed. It does not, and could hardly be made to, appear that such inspection must be continuous, covering every hour a barbershop is open; and to compel the closing of barber shops between certain hours, because it will be inconvenient for the city to then inspect them, when they are open at other hours amply sufficient for such inspection, would unnecessarily and unreasonably interfere with the operation thereof."

*City of Alexandria* v. *Hall*, 171 La. 595, 131 So. 722; *Patton* v. *City of Bellingham*, 179 Wash 566, 38 P. 2d 364, 98 A. L. R. 1076; *McDermott* v. *City of Seattle*, D. C., 4 F. Supp. 855; 7 Am. Jur. 617. All of the above decisions hold that in the case of barbershops the fixing of hours of business bears no reasonable relationship to the protection of the public. In that respect they differ from butcher shop cases. While we think the question not free from doubt we elect to follow the line of cases above set out especially in view of the principle that

"any fair, reasonable, substantial doubt concerning the existence of the power is resolved by the courts against the corporation [city], and the power denied." 1 Dillon, Municipal Corporations, 5th Edition, p. 449, § 237.

The Ohio cases cited by plaintiff, *City of Zanesville* v. *Wilson*, 51 Ohio App. 433, 1 N. E. 2d 638, affirmed in *Wilson* v. *City of Zanesville*, 130 Ohio St. 286, 199 N. E. 187,

arise under the plenary powers of Home Rule Cities and are not authority for the case at bar. They are authority only on the question of constitutionality.

The question arising in *Falco* v. *Atlantic City*, 99 N. J. L. 19, 122 A. 610, and *Pearce* v. *Moffatt*, 60 Idaho 370, 92 P. 2d 146, which plaintiff stresses, in which an ordinance regulating the closing hours of barbershops was passed pursuant to a specific legislative enactment authorizing municipalities to limit the hours of closing was held valid, is a question which this court does not at this time need to decide. We find that the municipality was not the delegated authority to control the closing hours of barbershops, either under its general police power given by Sections 15-8-84, and 15-8-61, or under the power to regulate certain named businesses. In the absence of a specific legislative enactment so providing for the municipality to act, we are of the opinion the ordinance requiring the closing of barbershops is an invalid exercise of the police power.

Our holding in this regard makes it unnecessary to consider the question of the constitutionality of the ordinance.

The demurrer was correctly sustained and is now affirmed. Costs to respondent.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.