Williams, J.
 

 The sole question is the constitutionality of the applicable part of Section 2 of Ordinance No. 4217, of the city of Springfield, passed November 9, 1942. Section 2 of the ordinance reads as follows:
 

 “No person, partnership, corporation, or agent or employee therein engaged in or connected with the sale of eyeglasses, ophthalmic lenses, eyeglass frames and mountings, shall include in any advertisement by newspaper, radio, display or otherwise, any statement advertising the price of lenses, or of complete eyeglasses, including lenses, either with or without professional services or credit terms, instalment payments or price plans, or the price of any frames or mountings, unless in conjunction therewith the words, ‘without lenses’ appear in such manner-to be clearly
 
 *51
 
 discernible, or read in such manner as to be clearly understood.”
 

 . The defendant contends that this section of the ordinance is violative of (1) Section 3, Article XVIII of Ohio Constitution, which authorizes municipalities to adopt such local police, sanitary and other similar regulations as are not in conflict with general laws; (2) the part of Section 1, Article I of the Ohio Constitution, which assures the inalienable rights of liberty and of acquiring, possessing and protecting property; and (3) the part of the 14th Amendment to the federal Constitution which provides that no state shall deprive, any person of life, liberty or property without due process of law. . As incidental to the first contention the defendant maintains that such section of the ordinance conflicts with Section 1295-31, General Code.
 

 ■The city of Springfield contends that the ordinance has a reasonable relation to the health and general welfare and is a valid exercise of the police power.
 

 Section 2 of the ordinance prescribes two separate and distinct offenses. It prohibits (1) advertising the price of lenses or of complete eyeglasses, including lenses, and (2) advertising the price of any frames or mountings without using the words “ without' lenses ” in conjunction therewith. The affidavit charges the defendant with the first offense only. Though the words “and did not in conjunction therewith use the words without lenses’ in a manner to be clearly discernible,” appear in the affidavit they.may be regarded as surplusage, for the reason that the affidavit does not charge the defendant with advertising the price of frames or mountings in a forbidden manner, which would be the gist of thé second offense prescribed in the ordinance.
 

 The applicable provision of the ordinance is all-comprehensive in that it prohibits advertising the price of lenses or.complete eyeglasses by all natural.
 
 *52
 
 and artificial persons engaged in or connected with the sale of such articles.
 

 Those who in pursuit of their vocation engage in making such sales may be divided into three classes— (a) the optometrist, (b) the optician and (c) the mere retailer.
 

 Optometry is a limited statutory profession and is defined by Section 1295-21, G-eneral Code, “to be the application of optical principles, through technical methods and devices in the examination of human eyes for the purpose of ascertaining departures from the normal measuring their functional powers and adapting optical accessories for the aid thereof.” A member of the learned profession of medicine may specialize in the care and treatment of the eye and make examinations for the correction of vision. Although he, in his practice as a physician, does much that is beyond the scope of optometry, he, when duly licensed, may also do the same work as an optometrist. In other words, he may, in addition to other professional work, practice optometry. Therefore, when we speak of the optometrist we shall include the physician who practices optometry.
 

 The optometrist tests and measures the eye, but, also, may and often does sell lenses and complete eyeglasses. The distinction between an optometrist and an optician has been pointed out by this court in a case in which a corporation, carrying on the business of an optician, together with its officers, agents and employees, was charged with contempt for the violation of a permanent injunction against the practice of optometry.
 
 Rowe
 
 v.
 
 Standard Drug Co.,
 
 132 Ohio St., 629, 638, 9 N. E. (2d), 609. See, also,
 
 State, ex rel. Bricker, Atty. Genl.,
 
 v.
 
 Buhl Optical Co.,
 
 131 Ohio St., 217, 2 N. E. (2d), 601. The optician furnishes eyeglasses upon the prescription of an optometrist and must grind the lenses or have them ground according to pre
 
 *53
 
 scription, fit them into a frame and bend tbe frame to fit tbe face. Tbe mere retailer sells complete eyeglasses regardless of tbe need of tbe customer. He lets tbe customer try on various pairs and pick a pair that seems to fit.
 

 Tbe first contention of defendant is twofold. He claims that tbe ordinance provision (a) “transcends tbe powers” granted by Section 3, Article XVIII of tbe state Constitution, authorizing the enactment of “such local police, sanitary and other similar regulations, as are not in conflict with general laws,” and (b) conflicts with Section 1295-31, General Code. Counsel for defendant maintain that “Section 1295-31 is patently a regulation of the extent to which optometrists may go in advertising for business.” Then counsel continue with this statement: “The Ohio State Board of Optometry may revoke, suspend or cancel the certificate of any optometrist found ‘guilty -of fraudulently advertising a price of spectacles or eyeglasses by cards, circulars, statements or otherwise, with intent to deceive or mislead the public.’ ” Counsel say, arguendo, that the ordinance is in conflict with the part of Section 1295-31, quoted and referred to.
 

 It is our judgment that there is no such conflict, and that the ordinance provision before us is not invalid on that ground and does not transcend the powers granted by such section of the state Constitution.
 

 The second contention of the defendant relates to Section 1, Article I of the state- Constitution, which assures the rights of liberty and property, and the third contention to the due process clause in the Fourteenth Amendment to the federal Constitution. These contentions may be considered together. If the ordinance provision under consideration is a reasonable and valid exercise of the police power, the provision is constitutional; otherwise it is unconstitutional.
 

 
 *54
 
 The sale of eyeglasses by a retail vendor may be regulated if not prohibited altogether. For instance, statutés which, respectively, prohibit (a) the sale of eyeglasses unless fitted by a competent person
 
 (D. S. Kresge Co.
 
 v.
 
 Ottinger, Atty. Genl.,
 
 29 F. [2d], 762), (b) a retail sale of eyeglasses unless a licensed physician-optometrist is present
 
 (Roschen
 
 v.
 
 Ward, Atty. Genl.,
 
 279 U. S., 337, 73 L. Ed., 722, 49 S. Ct., 336) and (c) anyone not a licensed optometrist from selling “spectacles, eyeglasses or lenses for the purpose of correcting defective vision”
 
 (Commonwealth
 
 v.
 
 S. S. Kresge Co.,
 
 267 Mass., 145, 150, 166 N. E., 558) have been held constitutional. See
 
 Commonwealth
 
 v.
 
 Ferris,
 
 305 Mass., 233, 25 N. E. (2d), 378, in which those cases are cited and commented upon. The danger of allowing a retailer to offer eyeglasses in mass to a customer who makes his own selection may well be restricted by legislation which prevents advertising them at a fixed price. The advertising would increase the sales and incidentally the harm that comes from using unfitted eyeglasses.
 

 On the question whether the optician may be constitutionally prohibited by legislation from advertising the price of lenses and complete eyeglasses, there is a conflict of authority. The constitutionality of such .legislation was sustained in
 
 Commonwealth
 
 v.
 
 Ferris, supra,
 
 and denied in
 
 State, ex rel. Booth,
 
 v.
 
 Beck Jewelry Enterprises, Inc.,
 
 220 Ind., 276, 283, 41 N. E. (2d), 622, and
 
 Ritholz
 
 v.
 
 City of Detroit,
 
 308 Mich., 258, 13 N. W. (2d), 283.
 

 The conflict of authority reached a climax in the
 
 Rithols case
 
 which was decided February 24, 1944, by a divided court. The position taken in the clear and concise majority opinion,.is that “the evil sought to be corrected by the ordinance [which,
 
 inter alia,
 
 prohibited advertising of the price of lenses or complete eyeglasses] is a business evil. The ordinance has no re
 
 *55
 
 lation to public health and is an unlawful interference with private business.”
 

 There is, however, a persuasive dissenting opinion in which the evils of bait advertising are pointed out distinctly. To show the factual situation, we quote from the opinion:
 

 ‘ ‘ The record shows' that plaintiffs advertised the sale of eyeglasses for $2.87. Prospective customers upon being told that plaintiffs only filled prescriptions usually went to the doctor in the adjoining office. The doctor charged and-kept a fee of $2 for his prescriptioh. This brought the cost of the eyeglasses up to $4.87. Plaintiffs did not stop there. It was shown that the average price- exacted from customers was over $14 for a pair of eyeglasses. This clearly indicates that the plaintiffs were deceiving the public by misleading price advertising. * * *
 

 “It was further shown that plaintiffs were not the only offenders in such ‘bait’ advertising. Even plaintiffs claimed, and introduced evidence to prove, that when the advertising of prices was stopped, their business showed a very heavy decline.”
 

 In
 
 Semler
 
 v.
 
 Oregon State Board of Dental Examiners,
 
 294 U. S., 608, 79 L. Ed., 1086, 55 S. Ct., 570, it was held that a statute which makes “advertising prices for professional service” a ground for revoking the certificate of a licensed dentist, does not constitute an arbitrary interference with liberty or property and is constitutional. The court, speaking through Mr. Chief Justice Hughes, referred with apparent approval towhat the state court said regarding the purpose of such legislation. “The Legislature,” the latter court said, “was aiming at ‘bait advertising.’ ” We conclude from what is said in the opinion as a whole that bait advertising may be defined as a method used by unethical professional men and others “ ‘to lure the
 
 *56
 
 credulous and ignorant members of tbe public to their offices for the purpose of fleecing them.’ ”
 

 It cannot well be questioned that the rule which applies to the dentist would apply to the optometrist. But would it not also apply to the optician?
 

 The dentist takes impressions and makes false teeth to fit the' mouth. The optometrist measures the eye and, if he chooses to sell complete eyeglasses, grinds the lenses or has them ground and then installs them in mountings to fit the eyes and face. But the optician divides work with the optometrist-in that the optician sells complete eyeglasses with lenses which he grinds or has ground according to the prescription furnished by the optometrist. In a certain respect, there is a marked similarity between the scope of the work of the dentist and the scope of the combined work of the optometrist and optician. The dentist produces fitted teeth, the optometrist and optician produce fitted eyeglasses complete. But why should legislation against bait advertising as to the price of lenses or complete eyeglasses be held valid as to the optometrist and not as to the optician? Is the prescription more important in relation to health than the grinding according to prescription? Lenses must be prepared by those trained in the grinding. Quality of material and skill in workmanship are prime essentials in producing the finished lenses. Poor quality and poor grinding will naturally result from the desire to sell spectacles in quantity at a low advertised price, with the purpose of underselling the optometrist and other opticians who do not indulge in such advertising. Poor and improperly ground lenses will impair the eyesight of the person to whom they are sold as properly fitted. Thus, legislation prohibiting such bait advertising has a real and substantial relationship to the public health whatever vendor employs the injurious method. The result of forbidding the professional practitioner to resort to
 
 *57
 
 such advertising and permitting the optician (o,r even the retail vendor) to indulge in the harmful practice does not eradicate the evil. The whole field must be covered if protection is to be afforded the public.
 

 Therefore an ordinance which prohibits advertising the price of lenses or complete eyeglasses is a reasonable and valid exercise of the police power.
 

 The municipal legislation under scrutiny is valid and constitutional and the judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Zimmerman and Turner, JJ., concur.
 

 Matthias, Hart and Bell, JJ., dissent.