261 P.2d 961

**MOSS, County Atty. ex rel. STATE TAX COMMISSION v. BOARD OF COM'RS OF SALT LAKE CITY et al.**

No. 8092.

Supreme Court of Utah.

Oct. 9, 1953.

Frank E. Moss, County Atty., G. Hal Taylor, Jay E. Banks, and Wm. J. Cayias, Asst. County Attys., Salt Lake City, for appellant.

Ray Christensen, City Atty., Homer Holmgren, Asst. City Atty., Salt Lake City, for respondent.

CROCKETT, Justice.

This is an original proceeding for an extraordinary writ (mandamus) to direct the City Commissioners of Salt Lake City, hereinafter referred to as the City, to vacate a levy of 23.5 mills on real and personal property as being in excess of a limitation of 18.5 mills provided in Section 10–8–87, U.C.A.1953. Because of the urgency of determining the issues presented before the due date for taxes (September 15, 1953) the justices of the court sitting en banc caused a minute entry judgment that the writ issue, to be entered on September 10, 1953. This opinion states the reasons upon which such judgment is based.

The 1953 Legislature enacted Chapter 21, S.L.U.1953 for the stated purpose of financing water purification and sewage disposal projects in municipalities of the State of Utah. It granted them the right to levy four mills on the dollar for those purposes. There is no doubt about the need for such facilities. The increased population which has accompanied the industrial growth of this state, especially in the area lying between the southern end of Utah Lake and the northern end of Great Salt Lake has intensified the problems which this legislation was expected to relieve.

On July 28, 1953, the City Commissioners adopted a resolution levying taxes on real and personal property within Salt Lake City for the various purposes permitted by law, including 4 mills pursuant to said Chapter 21, S.L.U.1953 (Water Pur-

ification and Sewage Disposal) and 1 mill pursuant to 37–2–1 U.C.A.1953 (for Library Purposes.) The Tax Commission form showing such levy, totalling 23.5 mills, was duly transmitted to the Utah State Tax Commission. The latter Commission requested the County Attorney of Salt Lake County to bring suit against the City Commission to set aside the levy as being in excess of the maximum (18.5 mills) permitted cities of the first class by the limitation in Section 10–8–87, U.C.A. 1953. The 4 mill and 1 mill levies above mentioned are the ones which the city contends it has authority to impose in addition to the 18.5 mill limitation referred to.

The general law empowering cities to levy taxes is said 10–8–87 which provides for the following mill levies for these stated purposes:

(1) Contingent Expenses (certain exceptions immaterial here)—3 mills.

(2) Waterworks, Irrigation etc.—4 mills.

(3) Streets and Sidewalks (same exceptions as (1) above)—3 mills.

(4) Sewers and Drains—2 mills.

(5) Gas, Electrical and Other Utilities —3.5 mills.

(6) City Halls and Memorials—5 mills.

(7) City Auditor—.5 mills.

(8) Public Safety—5 mills.

(9) Public Affairs and Finance—2 mills.

(10) Parks and Public Property—2 mills.

It will be noted that the aggregate of the above levies is 30 mills; yet a definite limitation of taxes which may be levied for all of the above purposes is expressly set out in the final paragraph of such section:

*"Provided, that in cities of the first class the total tax levy for all purposes in any year shall not exceed 18.5 mills,* and in cities of the second class having a population of less than 20,000 inhabitants the total levy for all purposes in any year shall not exceed 21.5 mills."* Emphasis added.

With respect to the 4 mill levy for water purification and sewage disposal projects authorized by said Chapter 21 S.L.U.1953, the question with which we are confronted is whether said Chapter 21 merely adds another category to the ten above enumerated, and which, like them is controlled by the over-all limitation just quoted, or is it such a separate enactment that it supersedes and takes precedence over such limitation?

The section under scrutiny, Chapter 21, S.L.U.1953, insofar as material here, states·

"There is hereby granted to the municipalities of the State of Utah * * *, in addition to all other rights of assessment, the right to levy a tax annually not to exceed four mills on the dollar * * *, which money raised by such levy shall be placed in a special fund and used only for the purpose of financing the construction of facilities to purify the drinking water * * * and * * * the treatment and disposal of the sewage * * *, or to pay principal and inter-

est on bonds issued for the construction of such facilities * * *. The municipality may accumulate from year to year and reserve in said special fund, the money raised for this purpose. Such levy shall be made and collected in the same manner as other property taxes * * *."

Notwithstanding the fact that the section just quoted neither expressly repeals nor makes any reference to the pre-existing limitation contained in 10–8–87, the city contends that it stands as a separate and independent grant of power not restricted by such limitation. Various supporting arguments are advanced: That the Legislature indicated by this enactment and other legislation passed at the same session a public policy of the state to give to cities a method and means of raising money for particular improvements which, it was contemplated, would eliminate unsanitary and unwholesome conditions, and that the levy is necessary to carry out the declared purposes of the act; that the money is to be collected *as other property taxes;* that the money goes into a special fund, not the general fund of the city, to be used for the one purpose only; that the words "in addition to all other rights of assessment" indicate a new and additional grant of power to levy taxes; that it was general knowledge that the city

had for several years levied the maximum 18.5 mills under the old law; and we are advised, dehors the record, that the Mayor of Salt Lake addressed the Legislature and told them of the City's problems and the need for additional funds; wherefore it is urged that the Legislature intended that the grant in question be an exception to the general limitation in 10–8–87.

The foregoing arguments appear plausible, but upon analysis it is found that they fail to take into account certain salient and inescapable principles of statutory construction. Despite the off the record information proffered as to what the Mayor told the Legislature, and speculation as to what their knowledge and intention were, it is with their declaration in the enactment itself that we must be principally concerned in determining its meaning.[1]

The City's power to tax is derived solely from legislative enactment and it has only such authority as is expressly conferred or necessarily implied. This court has not favored the extension of the powers of the city by implication,[2] and the only modification of such doctrine is where the power is one which is necessarily implied.[3] Unless this requirement is met, the power cannot be deduced from any consideration of convenience or necessity, or

1. People ex rel. v. Wabash Ry. Co., 349 Ill. 93, 181 N.E. 610; 64 C.J.S., Municipal Corporations, § 1983(a), p. 652.

2. Nasfell v. Ogden City, Utah, 249 P.2, 507.

3. Ibid. See also, Salt Lake City v. Revene, 101 Utah 504, 124 P.2d 537; 1 McQuillan Municipal Corporations 2nd Ed. Section 367.

desirability of such result, and no doubtful inference from other powers granted or from ambiguous or uncertain provisions of the law would be sufficient to sustain such authority.[4] This is a fortiori true in the instant situation, because in case of any ambiguity or uncertainty as to authority to impose taxes, the doubt must be resolved in favor of the taxpayer.[5]

The fact that the money was to go into a separate fund for one express purpose and was to be collected in addition to *all other rights of assessment*[6] brings about no significant difference between this grant and the ten categories in 10–8–87. There is nothing about such circumstances which would render inconsistent or unreasonable the construction placed thereon by plaintiff: that it simply adds a new category, which is also subject to the overall limitation. From the fact that the various authorized mill levies for stated purposes aggregate 30 mills, yet the limitation is 18.5 mills, it is obvious that it was not intended that cities should levy the maximum for all of such purposes. This is particularly true of the new enactment, Chapter 21 S.L.U. 1953, with which we are concerned. While the old statute provided that cities "shall" make the various mill levies hereinabove

set out, the new section, it will be noted, is permissive, merely granting cities " * * the right to levy a tax annually not to exceed * * *." etc.

■■ Nor can it properly be said that the failure to interpret this statute as an additional power of taxation over and above the maximum in 10–8–87 would render it nugatory. It creates a new purpose for which taxes may be levied. Cities of the first class may carry out its purpose by effecting economies resulting in a reduction in the mill levy in other categories, so long as the 18.5 mill limit is not exceeded; and cities not under the limitation, are authorized to impose the new tax. Hence, Chapter 21 can stand independently and be given effect without the interpretation that a city of the first class may now exceed the 18.5 limitation imposed by the former statute. It is elementary that the repeal or over-riding of an existing law by implication is not favored and only occurs if the later statute is wholly irreconcilable with the former.[7] Wherever two such statutes can stand separately, both should be given effect.[8]

Plaintiffs pose this pertinent inquiry: If the limitation declared in 10–8–87 is

4. 38 Am.Jur. 72 Municipal Corporations Sec. 385.

5. Norville v. State Tax Comm., 98 Utah 170, 97 P.2d 937, 126 A.L.R. 1318; Los Angeles & Salt Lake Ry. Co. v. Richards, 52 Utah 1, 172 P. 474; W. F. Jensen Candy Co. v. State Tax Comm., 90 Utah 395, 61 P.2d 629, 107 A.L.R. 261.

6. The word "assessment" probably used as synonymous with "levy." See Huyler v. Huyler's, Sup., 44 N.Y.S.2d 255, 257.

7. 1 Sutherland's Statutory Construction 3d Ed. Sec. 1913.

8. 2 Sutherland's Statutory Construction 3d Ed. Sec. 5201.

overridden by the simple expedient of enacting a later statute authorizing an additional levy, then of what value is the limitation? If so circumvented, how is any effect given to the limitation statute? And further suggest that if it is of no effect, that it should be repealed. They insist, however, that had the act in question set out in clear language an intent to repeal or raise the limitation of 10–8–87 it would have been doomed to defeat by that session of the Legislature, which was avowedly following an economy program; or in any event vetoed by the Governor who likewise has expressed himself as being inclined against increases of taxes generally. Whether this contention is correct we cannot know, but it is certain that the Legislature has control of its own acts and would not need to use an indirect approach if they actually intended Chapter 21 to allow cities of the first class to exceed the stated tax limit. The legislature is aware of its plain duty to the public, insofar as possible, to couch its enactments in clear and unambiguous language so that its members, those who administer the law, and the public will understand it. This is especially so with respect to the all-important subject of taxation. It is certainly to be assumed that the Legislature acted openly and aboveboard and without any design to circumvent the limitation by artifice, and that they would have used the very few additional words necessary to render the matter clear if removal of the limitation had been their intention.

As to the one mill levy for the library, while there are some differences from the four mill levy just discussed, they do not require a different result. If the language of section 37–2–1 U.C.A.1953 could be regarded as mandatory upon cities (as matrial here—cities of the first class) there might be a basis for interpreting that act as not falling within the limitation of section 10–8–87 because it would be the "last expression of the Legislature upon the subject".[9] Such section states:

"The governing body of each city of the first and of the second class *may* establish and maintain public libraries and reading rooms for the use and benefit of its inhabitants. For that purpose cities of the first class *must* levy annually a tax of one-third of one mill on the dollar and *may* levy a tax of not to exceed one mill on the dollar * *."

The italicized words suggest the general tenor of the act to be permissive rather than mandatory, especially when read in conjunction with the latter part of the same section:

"* * * provided, that no such tax shall be levied in the first instance in any city of the first class until a petition therefor, signed by at least one thousand qualified voters and property

9. See Denver & R. G. R. v. Grand County, 51 Utah 294, 170 P. 74, 77, 8 A.L.R. 1224.

taxpayers, residents therein, shall have been filed with its governing body * * *."

and Section 2 thereof indicates that after such petition of 1,000 taxpayers is filed, the commission is then empowered to *decide* to establish a library. True, the declaration that after the library is established cities of the first class apparently *"must* levy annually a tax of one-third of one mill on the dollar" is mandatory in form to that extent, but is continues "and *may* levy a tax of not to exceed one mill * *." The broad import of the statute is permissive and there is therefore some ambiguity, in which case we must favor the general permissive flavor of the enactment. Even if the wording as to the ⅓ mill be mandatory, adding it to the 18.5 mill limitation would raise the permissible levy only to 18.-8 mills. The fact that the library is a separate body politic created by statute and administered by its own board does not obviate the fact that the funds for its maintenance must come through the city's power to levy taxes for that purpose and must be governed by statutes prescribing them.

▆▆ The same reasoning as has been above set forth with respect to the 4 mill levy applies to the 1 mill levy for the library. The statute authorizing it does not expressly repeal or necessarily supersede the specific limitation contained in 10-8-87 as to the over-all limitation on cities of the first class to levy taxes.

We arrive at the conclusion herein fully aware of the decision of this Court in Denver & R. G. R. v. Grand County,[10] upon which defendants place emphasis in support of their position. There are significant differences between the statutes there involved and their relationship to each other and those with which we are here concerned. The county's taxing authority was found in section 2593 C.L.U.1907 providing that the county " * * * must levy taxes * * * not exceeding five mills on the dollar for *general* county purposes, and may levy a tax not exceeding one mill additional * * * for the * * * relief of the indigent sick * * * and not exceeding four mills * * * for district school purposes". Subsequently the "Dependent Mothers' Act of 1913" authorized the Board of County Commissioners to provide funds for dependent mothers not exceeding the sum of $10,000 in any one year. The county levied its 5 mills for general purposes; ½ mill for the sick and poor, and an additional one mill levy under the Dependent Mothers' Act. This Court rejected plaintiff's challenge that the latter levy was in excess of the maximum under section 2593 above. Certain statements in the case lend credit to defendant's contention that the later enactment for a specific purpose supersedes the limitation. It should be carefully noted that in the Grand County case just referred to the limitation was not an *over-all* limitation on the counties as is the case under the provisions of 10-8-87 which establishes a maximum for *all* pur-

poses. But in the Grand County case the statute expressly stated the limit of 5 mills for *general* county purposes, whereas the later enacted Dependent Mothers' Act was for a *specific* purpose, just as were the levies for district schools and indigent sick which were also regarded as in addition to the 5 mills for general purposes.

Attention is also called to the fact that the court in the Grand County decision clearly indicated that it was not a little dubious of its own position. It placed considerable importance upon the desirability of the law, the necessity of the levy, and in effect, warned that although it was going to recognize the power of the county to levy in excess of the limitation in that particular instance no license to disregard limitations in the future should be taken therefrom, saying:

"We are not to be understood as holding that any act of the Legislature authorizing the expenditure of public funds for every purpose could or should be permitted by the courts. We are simply determining in this case that the question is so close and not free from difficulty of determination that we are resolving that doubt in favor of the policy established by the Legislature * * *.

"We are not unmindful that many courts of the highest authority, and whose judgments are entitled to great weight and respect, have stated rules or elucidated principles which might, by analogy, seem to hold contrary to the views herein expressed".

Although, as pointed out, the cases are distinguishable, we reach the conclusion announced herein notwithstanding what this court said in the Grand County case just adverted to. In view of the fact that Chapter 21 S.L.U.1953 providing for the levy of 4 mills for water purification and sewage disposal facilities, and Section 37–2–1, U.C.A.1953 allowing 1 mill for library purposes, neither expressly nor by implication repeal or supersede the limitation of 18.5 mills set out in Section 10–8–87, U.C.A.1953 as the maximum tax levy permitted cities of the first class for all purposes, it follows that the levy herein assailed is invalid, and that the writ prayed for should issue.

No costs awarded.

McDONOUGH, HENRIOD and WADE, JJ., concur.

WOLFE, C. J., not participating.