284 P.2d 702

Benjamin D. RITHOLZ et al., d/b/a King Optical Company, Plaintiffs and Respondents,

v.

The CITY OF SALT LAKE et al., Defendants and Appellants.

No. 8296.

Supreme Court of Utah.

May 27, 1955.

Christenson, Holmgren & Christoffersen, Geo. E. Bridwell, Salt Lake City, for appellants.

Keith Jay Holdsworth, Salt Lake City, amicus curiae.

Clifford L. Ashton, Salt Lake City, for respondents.

CROCKETT, Justice.

Price advertising of eyeglasses is prohibited by an ordinance of Salt Lake City. Its validity is here challenged.

Plaintiffs operate King Optical Company in Salt Lake City in which they sell eyeglasses to customers on prescription of licensed doctors and eye specialists.[1] They engage in public advertising including the running of ads in local newspapers that they will sell any eyeglasses for the uniform price of $8.98, which is conceded to be in violation of a Salt Lake City ordinance. The parts material to the attack here made upon it are as follows:

"No person, firm, [etc.] * * * engaged in the sale of prescription eye-glasses, * * * shall directly or indirectly cause to be * * * pub-

___

1. This group includes registered ophthalmologists, optometrists and licensed physicians and surgeons; it excludes opticians, the artisans who grind lenses and fit them to the frame.

lished, * * * in any manner whatever any statement or advertisement of any kind or nature.

"(1) That states a definite or fixed price or range of prices for such articles, * * *".

In a declaratory judgment action,[2] the trial court found the ordinance to be unconstitutional and granted a permanent injunction against enforcing it.

The ordinance is attacked on two grounds:

First, that it is ultra vires the powers of the city, and

Second, that it is an unwarranted infringement of constitutionally guaranteed rights, going beyond the proper exercise of the police power.

In relation to the ultra vires question, it should be noted that in this state, cities are creatures of statute[3] and limited in powers to those delegated by the legislature,[4] which we have characterized as: "first, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation * * *."[5]

This court has generally adhered to a policy of rather strictly limiting the extension of the powers of a city by implication.[6] Plaintiff urges that because of this commitment we should hold the ordinance invalid since there is no express authority delegated to the city relative to advertising eyeglasses. It is pointed out, however, that the powers relied on by the city in enacting this ordinance are the expressly delegated powers to "license, tax and *regulate* * * * the business conducted by merchants, wholesalers and *retailers, shopkeepers and storekeepers* * * *"[7] (emphasis added), to preserve the safety, health and morals of the city[8] and to safeguard the general

2. 78–33–1 Utah Code Annotated 1953.

3. Chapter 8, Title 10, Utah Code Ann. 1953; Salt Lake City v. Revene, 101 Utah 504, 124 P.2d 537, 540. See 37 Am. Jur., Municipal Corporations, sections 7–17. The Utah court has recognized a distinction between the authority of non-home rule and home rule cities.

4. Nasfell v. Ogden City, Utah, 249 P.2d 507; Walton v. Tracy Loan & Trust Co., 97 Utah 249, 92 P.2d 724; Wadsworth v. Santaquin City, 83 Utah 321, 28 P.2d 161; Salt Lake City v. Sutter, 61 Utah 533, 216 P. 234.

5. Salt Lake City v. Revene, supra [101 Utah 504, 124 P.2d 538], quoting 1 Dillon Municipal Corporations, 5th Ed., p. 448 Section 237; Nasfell v. Ogden City, supra.

6. Moss ex rel. State Tax Commission v. Board of Commissioners of Salt Lake City, 1 Utah 2d 60, 261 P.2d 961.

7. 10–8–39 Utah Code Ann.1953.

8. 10–8–84 Utah Code Ann.1953 provides: "They may pass all ordinances and rules, and make all regulations, not repugnant to law, necessary for carrying into effect or discharging all powers and duties con-

health of the inhabitants.[9] We stated in Ogden City v. Leo [10] that "where the power 'to regulate' a particular calling or business is conferred on a city, it authorizes such city to prescribe and enforce all such proper and reasonable rules and regulations as may be deemed necessary and wholesome in conducting the business in a proper and orderly manner."

In this particular context the power to regulate business can mean only such regulations as are reasonably and substantially related to the safeguarding of the public health which raises the question whether the advertising proscribed by the ordinance bears such a relation. This involves consideration of the constitutional as well as the ultra vires problem since the city cannot be authorized to do what the legislature itself has not the power to do.[11]

To begin with, we observe that the city offered no evidence at the trial to show any relationship between advertising eyewear and public health. There is urged before us only conclusions of law made by other courts, presumably upon the basis of some factual showing in each case. But we disregard this deficiency in the presentation of evidence and consider the contentions presented to us. From them it appears, and we assume it to be a fact, that the only argument which can be made that price advertising is detrimental to public health is directed at *low* price advertising. The rationale of these cases is that such prohibition of advertising is related to public health because advertising eyewear will bring about low prices and hence poor quality, resulting in damage to the eyes and consequent poor health.[12] It is argued that such advertising will possibly deceive people whose eyes actually need special corrective lenses, or case hardened lenses re-

ferred by this chapter, and such as are necessary and proper to provide for the safety and preserve the health, and promote the prosperity, improve the morals, peace and good order, comfort and convenience of the city and the inhabitants thereof, and for the protection of property therein * * *."

9. 10-8-61, Utah Code Ann.1953 provides: "They may make regulations to secure the general health of the city, prevent the introduction of contagious, infectious or malignant diseases into the city, and make quarantine laws and enforce the same within the corporate limits and within twelve miles thereof. * * *"

10. 54 Utah 556, 182 P. 530, 532, 5 A.L.R. 960.

11. 37 Am.Jur., Municipal Corporations, Section 279, and cases cited in note 7 at page 907.

12. City of Springfield v. Hurst, 144 Ohio St. 49, 56 N.E.2d 185; Ritholz v. Johnson, 246 Wis. 442, 17 N.W.2d 590; Ritholz v. Commonwealth, 184 Va. 339, 35 S.E.2d 210; State v. Rones, 223 La. 839, 67 So.2d 99; Williamson v. Lee Optical of Oklahoma, D.C., 120 F.Supp. 128. Oklahoma Statute was held not violative of Federal Constitution, Williamson v. Lee Optical of Oklahoma, 348 U. S. 483, 75 S.Ct. 461.

quired in hazardous occupations, which cannot be furnished for the low advertised price, and that they will thus not receive the proper lenses for their eyes with the ill results above mentioned. With due deference to the opinions of those courts which have arrived at that conclusion, there are cogent reasons which persuade us to the opposite result.

The ordinance is here attacked primarily upon the grounds that it is an encroachment on property rights and the right of free expression guaranteed by Section 1, Art. 1 of the Utah Constitution which assures that: "All men have the inherent and inalienable right to enjoy and defend their lives and liberties; to acquire, possess and protect property; * * * to communicate freely their thoughts and opinions, * * *."

██ Clearly among the rights attendant upon ownership and enjoyment of property are the rights to exchange, pledge, sell or otherwise dispose of it—rights which must be adequately protected. Among other fundamental privileges is freedom to express one's thoughts, including freedom to publish notice of a willingness to dispose of one's property,[13] and upon what

terms. It cannot be doubted that this ordinance does constitute a limitation upon such rights, a limitation which can only be justified if it is necessary for the health, morals, welfare or some similar important consideration of the public weal.

█ In judging the propriety of this enactment, we must take into consideration the balance between the alleged evil sought to be corrected and the limitation on constitutional rights the ordinance would impose. In reference to the use of the police power for such a purpose, this Court has said: "There must exist an evil of a substantial nature, the correction of which would serve the public welfare * * *."[14] We turn to inquire as to the nature and extent of the alleged evil, i. e. the claimed adverse effect upon public health.

It should be borne clearly in mind that the purported cause of such evil is solely that of *price advertising of eyeglasses*. The advertised price does not relate to or in any way affect the professional examination of the customer's eyes. It is not as though the customer went to the plaintiff and purchased eyeglasses for the advertised price, trusting entirely to plaintiff that he

13. In Saville v. Corless, 46 Utah 495, 151 P. 51, 52 L.R.A.1916A, 651, we held a statute regulating working hours of all employees of mercantile establishments and fixing the closing time at not more than 6 p. m. to be unconstitutional. We said: "We think it also offends against

constitutional rights to enjoy, acquire and possess property, the most valuable of which is that of alienation, the right to vend and sell."

14. Backman v. Bateman, 1 Utah 2d 153, 157, 263 P.2d 561, 563.

would receive correct glasses to fit his condition. If it were so, there might be more merit to the argument that glasses of an inferior grade would be furnished which could result in harm. But under the plaintiff's system of operation, the customer goes to an eye specialist who gives him an examination and writes out a prescription indicating the glasses needed; the prescription is then presented to plaintiff whose function it is to fill the prescription according to the specifications. Such a customer has already manifested sufficient interest in the care of his eyes that he will likely check back with the specialist to see that the glasses are proper, hence he is not entirely at the mercy of a vendor such as plaintiff. People will, and as a matter of fact they usually do, use some degree of circumspection relative to items like eyeglasses which they know must serve a corrective function with respect to such important and delicate organs as their eyes.

In respect to the argument that this advertising will "deceive the unwary" so that a certain percentage of people will be injured by their own folly, the answer is that this is true of all forms of advertising. If the advertiser actually overreaches or deceives, he is in violation of the law against such practice,[15] and a remedy is available.[16] It should be noted that the law cannot be made, nor could one be enforced, which would entirely protect the completely naive and gullible. In any event, if a customer desires to use ordinary care, adequate protection is afforded so that there would seem to be little or no danger to his eyes from the use of glasses furnished at an advertised price. Indeed, the customer may benefit therefrom.

There are also other considerations to be taken into account as against the contention made by the city that the ordinance would tend to insure better quality of eyeglasses and conserve public health. One of these is that the basic theory underlying our system of government, its laws and our entire social system, is that all persons shall enjoy the highest possible degree of individual freedom consistent with the same degree of liberty in others, which theory this restriction upon plaintiffs' business runs counter to. Another is the effect which free competition, of which price advertising is a necessary adjunct, has upon business. Such freedom in competition has proved very beneficial to our economy and our standard of living. Its stimulus has resulted in producing ever more efficient methods by which the American people have been furnished more and better services and higher quality merchandise. They have proved themselves sufficiently good judges of the quality of products that those who excel in furnishing superior ones

15. 76–4–1, Utah Code Annotated 1953.

16. Art. 1, § 1 of the Utah Constitution guarantees freedom of expression, but holds individuals "responsible for the abuse of that right."

succeed and continue to improve, while others fail.

The very element of competition through price advertising may well have beneficial effects upon the quality of the product sold which would offset any possible slight detriment to health that may be hazarded if such advertising were curtailed. Whatever adverse effect might result, and it seems open to serious question whether any such effect would actually eventuate from this advertising, we are of the opinion that it does not have any such substantial bearing on public health as to justify this extension of the police power into the regulation of private business and the violation of the right to freely advertise and sell one's property. We do not believe that the constitutional rights involved should be swept away on any such tenuous ground. This is in agreement with the view of the Supreme Court of Michigan, which court declared an ordinance much like ours unconstitutional, saying: "* * * the evil sought to be corrected by the ordinance is a business evil. The ordinance has no relation to public health and is an unlawful interference with private business." [17] It is also parallel with the principle espoused by this Court in the case of Salt Lake City v. Revene,[18] in which we decreed the or-dinance fixing opening and closing hours of barber shops to have no substantial relationship to public health, being outside the scope of the power of the city to enact.

Even if it should be conceded that low price advertising of eyeglasses were related to public health, it is to be noted that this ordinance forbids *all* advertising of prices of prescription eyewear, including a "range of prices." This interdicts even higher prices, for example a range from $10 to $100, from being made known to the public through any advertising medium. It is of course realized that the ordinance was actually directed at low prices, but if we consider the literal prohibition of admittedly legitimate advertising, it would seem even harder to justify the ordinance on any basis of relationship to public health.

Provision (c) of the ordinance plainly makes its parts severable as to constitutionality.[19] Since this attack is directed only at the price and price advertising portion of the ordinance, the judgment and decree of the trial court declaring that aspect of the ordinance unconstitutional is affirmed and the injunction with respect thereto is made permanent.

Costs to respondents.

---

17. Ritholz v. City of Detroit, 308 Mich. 258, 13 N.W.2d 283, 284.

18. Footnote 3 supra.

19. The Salt Lake City ordinance contains this saving provision: "(c) If any phrase or part of this ordinance is declared to be invalid, that portion shall be severable and the remaining portions shall be and remain in full force and effect."

McDONOUGH, C. J., and WADE and WORTHEN, JJ., concur.

HENRIOD, Justice.

I concur. In so doing, it is the writer's opinion that if the basic premise upon which appellants, in logic, must predicate their case, i. e., that advertising eyewear at a fixed price is a deception practiced as a lure and bait to the unwary and as such false and misleading, the part of the ordinance which this decision assails is really unnecessary, since our state statutes make such type of advertising a misdemeanor,[1] and the remainder of the ordinance which is not struck down by this decision, which prohibits advertising that is "false or misleading," in my opinion, would be within the power of the city to enforce. If such advertising as is involved in this case *in fact* is false and misleading, such fact would be provable by competent evidence adduced in a proper proceeding designed to end it. But for us, or counsel, or the city fathers, to assume, or assert or guess that advertising a fixed price is a fact that without more, proves another fact, i. e., inferior quality of a commodity, simply is to say that which I believe cannot be justified by any sort of syllogistic reasoning.

1. Title 76–4–1, Utah Code Annotated 1953.