298 P.2d 524

**BOUNTIFUL WATER SUBCONSERVANCY DISTRICT, a Public Corporation, Plaintiff and Respondent,**

v.

**BOARD OF COMMISSIONERS OF DAVIS COUNTY, Utah, et al., Defendants and Appellants.**

No. 8426.

Supreme Court of Utah.

June 11, 1956.

E. R. Callister, Jr., Atty. Gen., Raymond Gee, Asst. Atty. Gen., Milton J. Hess, Davis County Clerk, Farmington, for appellants.

Keith Stahle, Bountiful, Neil R. Olmstead, Ogden, E. J. Skeen, Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from a judgment declaring that under the provisions of the Water Conservancy Act,[1] the board of directors of a subdistrict was empowered to levy and col-

1. Title 73–9, Utah Code Annotated 1953.

lect an ad valorem property tax for construction and maintenance of the facilities for distribution of water to consumers within the subdistrict. Reversed. No costs awarded.

Our Act was passed in 1941. Its purpose generally was declared to be for the development and conservation of the water and land resources of the state for the benefit and advantage of the people of the state, and to effect the greatest possible beneficial use of water. The district boards were empowered to levy an ad valorem tax to accomplish their purposes. The Act also permitted organization of subdistricts within or partly in and out of the districts. However, a subdistrict had no such authority to levy ad valorem taxes to accomplish the purpose of the subdistrict. Its board of directors and that of the district were the same.

In 1951 an amendment gave subdistricts an independent entity status within the district and provided for an independent board. It also provided that "The board of directors of a subdistrict shall have the same powers and duties as a district board." [2]

■ The defendants contend that the language mentioned 1) is not an express grant of power to a subdistrict board to levy an ad valorem tax; 2) that viewed in the light of other sections, an ambiguity is created resolvable against the taxing authority and in favor of the taxpayer; [3] 3) that no power to tax can be implied therefrom when the whole act is considered; and 4) that there is no necessity that an ad valorem tax be levied in order to carry out the purposes of the subdistrict. Plaintiffs contend otherwise, and their main argument is that the language *expressly* authorized the subdistrict to levy an ad valorem tax within the subdistrict.

Counsel for defendants point out a number of circumstances and reasons which we think may not be of too great moment singly, but which in the aggregate are persuasive in interpreting the Act. They call our attention to the following: 1) That our Act was taken from Colorado[4] which also made provision for subdistricts having no power to levy ad valorem taxes, but that later, when two conservancy districts were created by the Colorado legislature, subdistricts being included therein,[5] the legislature expressly granted the subdistricts power to levy taxes, defining their limitations and providing procedures to follow, thus indicating a legislative intent to grant a power to levy a tax by the subdistrict

---

2. Laws of Utah 1951, Chap. 120, Sec. 1, now 73-9-14, U.C.A.1953.

3. Moss ex rel. State Tax Comm. v. Board of Comm., 1 Utah 2d 60, 261 P.2d 961; Cooley, Taxation, Vol. 1, 4th Ed. Sec. 83.

4. Sec. 149-6-15, Colorado Revised Statutes 1953.

5. Chap. 149, arts. 8 & 9, Colorado Revised Statutes 1953.

board only when spelled out in unquestionable and express language; 2) that another section of the Act[6] permits a district created in the Colorado River Compact area to levy a 5 mill tax whereas in other areas only 1 mill is permissible, and that it would not seem reasonable to assume that the legislature intended to grant to a subdistrict board in such area the same power to levy a 5 mill tax that would result in a 10 mill levy as compared with 2 mills elsewhere; 3) that while under one section of the Act[7] districts are empowered to levy ad valorem taxes, another section[8] provides that if irrigation districts receive water from the district, a special assessment may be levied by the irrigation district *or* by the conservancy district *as the conservancy district board may determine* (as it may also determine if the water is needed and whether it will be allocated at all), and that if a subdistrict is organized and contracts for water with the district, the special assessment will be levied *as in the case of an irrigation district,*—provisions which are inconsistent with the plenary and autonomous power claimed for the subdistrict board,—presenting such conflict as to require that doubts be resolved against the taxing authority and in favor of the taxpayer; 4) that the Act provides for raising revenues by subdistrict boards by special assessment and otherwise[9] so that there is no necessity to imply a power to tax in order to carry out the purposes of the subdistrict; and 5) that the legislature required that *districts* might be organized only where assessed valuation exceeded a certain figure whereas there was no such limitation on *subdistricts,* suggesting a smaller agency with a much more local purpose, but not necessarily with the far-reaching power to tax generally. These and other matters set out below lead us to conclude that the amendment was not intended to give subdistrict boards the broad power to levy and collect an ad valorem tax on property owned by both consumer and non-consumer of the water, but that any argument revolving about such proposition should be and is resolved by us against the taxing authority and in favor of the taxpayer because of the inconsistencies found in the Act itself which becloud any clearcut and express grant of power to tax on the part of the subdistrict board.

The Act's avowed purposes point to statewide water conservation and use for the benefit of the public generally, securing water to wide areas,—perhaps entire watersheds. Availability of water to such large areas certainly can be said to innure to the public benefit generally and appreciates the value of everyone's property in the district. It is doubtful if the same conclusions necessarily need be indulged in the case of localized subdistricts where the water is already available for distribution and designed for consumption.

6. Title 73–9–16, U.C.A.1953.

7. Title 73–9–15, U.C.A.1953.

8. Title 73–9–18, U.C.A.1953.

9. Title 73–9–13, U.C.A.1953.

For 10 years under the 1941 Act, subdistrict boards had no power to levy an ad valorem tax to construct distribution systems, and had they been constructed, concededly it would have to have been accomplished by some means other than an ad valorem tax levied by a subdistrict board. It does not seem unreasonable to assume that during that decade the legislature treated conservancy districts as one would look at a manufacturer of a marketable product, and treated subdistricts as one might look at retailers who sell such product to the ultimate consumer, intending that such consumer, being beneficiary of the water, should pay for it and the immediate means of bringing it from the outer edge of the subdistrict to the user's property. Such a result and conclusion seem to be eminently fair, and we entertain serious doubts that the consumer would either want or expect the non-consumer to join in footing the bill.

If the power to tax lay with the subdistrict board, it would take little or no imagination to visualize a situation where a handful of users sufficient in number to organize a subdistrict could circumscribe within a subdistrict a large non-consuming but highly valuable industrial plant which would virtually pay for all the water used therein with little or no cost to the consumer. We do not believe the legislature intended to provide such an unfair opportunity for a few, but rather had in mind the continuing role of a subdistrict as being the last instrumentality used in the process of getting water to the ultimate consumer who, we believe it also intended, should pay for it and its distribution cost. Such result is accomplishable under the Act without levying an ad valorem tax, so that this is not a case where the water would be lost to the consumer but for an ad valorem tax.

This very case seems to bear us out. The Bountiful Water Subconservancy District appears to have been organized to deliver water to a comparatively small area, for local people and for a purely local benefit, its area apparently representing but a small fraction of the Weber Basin Conservancy District of which it is a small part.

Furthermore, it will be observed that nowhere in the Act is the word "tax" employed in close proximity with or in the same section where subdistricts are mentioned, except in that section where a subdistrict will be furnished water like irrigation districts, whence an assessment can be levied to be "spread on the *tax* rolls and collected in the same manner as herein provided in the case of irrigation districts." This section does not square with the idea that a subdistrict has plenary, autonomous power to determine need for the water or to levy and collect an ad valorem tax, since its ability and power to obtain funds under that section, are conditioned on permission obtained from some other agency. The word "subdistrict" actually connotes an operation "under" a controlling agency other than itself, and although the nomen-

clature may not be too significant or the point too weighty, at least the title "subdistrict" would be a misnomer if the powers claimed for it had been granted to it. (Italics supplied for emphasis.)

McDONOUGH, C. J., and WADE and WORTHEN, JJ., concur.

CROCKETT, J., concurs in result.