LIST et al. v. REICK.

No. 29644. July 2, 1940.

*104 P. 2d 248.*

L. N. Kimrey, of Pawnee, for plaintiffs in error.

Louis H. Byers, of Cleveland, for defendant in error.

OSBORN, J. This is a proceeding to test the sufficiency of an initiative measure relating to the city of Cleveland, Pawnee county, Okla., wherein the city clerk held an instrument denominated "Initiative Petition No. 1" insufficient. The review is sought by R. E. List, Fred Vende, and Vol Williams, hereinafter referred to as proponents, against Louis Reick, who protested the sufficiency of the petition, hereinafter referred to as protestant. Proponents seek to have said proceedings declared sufficient.

The instrument labeled "Initiative Petition No. 1," containing some 312 names, was filed with the city clerk of the city of Cleveland on November 23, 1939, and contained the following language:

"To the Honorable Board of Commissioners of the City of Cleveland, State of Oklahoma, Pawnee County.

"We, the undersigned Citizens and legal voters of the City of Cleveland, Pawnee County, State of Oklahoma, respectfully order that the following proposed Ordinance shall be submitted to the legal voters of the City of Cleveland, Pawnee County, Oklahoma, for their approval or rejection at a special election to be held on the 15th day of December, 1939, and each for himself says:

"I have personally signed this petition: I am a legal voter of the State of Oklahoma, and of the City of Cleveland and of Pawnee County; my residence and post office are correctly written after my name. The time for filing this petition expires three months from the 13th day of November, 1939. The question we herewith submit to our fellow voters is: Shall the following ordinance be adopted:

"An Ordinance Repealing the City Charter now in Force in the City of Cleveland, Pawnee County, Oklahoma, Together With all Amendments Thereto, and all Ordinances and Resolutions Passed in Pursuance Thereof That Are in Conflict With the Statutes of the State of Oklahoma, and Establishing the Aldermanic Form of Government as Provided by the Statutes of Oklahoma, for the Said City of Cleveland, Oklahoma.

"Ordinance.

"Be it ordained by the people of the City of Cleveland, Pawnee County, Oklahoma, as follows:

"Section 1. That the Charter form of Government now in force in the said City of Cleveland, Oklahoma, together with all amendments thereto, and all resolutions and ordinances passed in pursuance thereof, which are in conflict with the statutes of the State of Okla-

homa, be and the same are hereby repealed, and the said Charter bearing date of August 5th, 1930, and recorded in the records of the said City of Cleveland on the 19th day of August, 1930, and filed with the Secretary of State of the State of Oklahoma, on the 15th day of November, 1930, and filed with the County Clerk of Pawnee County, Oklahoma, and recorded in Book 45 at page 450 Miscellaneous record thereof, be, and the same is hereby repealed, together with all amendments thereto, and all resolutions and ordinances passed in pursuance thereof, which are in conflict with the Statutes of the State of Oklahoma, and that the Aldermanic form of Government be established, and the same is hereby established for the Government of the said City of Cleveland."

Following publication of the petition, and within ten days thereafter, Louis Reick filed his protest with the city clerk, who set same for hearing, and upon the hearing denied the sufficiency of the petition, setting out his reasons therefor, among which were failure to secure sufficient names thereon, failure to proceed in accordance with the city charter regarding such procedure, and failure of the proposed ordinance to provide any substitute form of government in said city upon repeal of said charter.

The parties have filed a stipulation in this court wherein they agree that the only questions before the court are questions of law and that the cause may be submitted on the briefs. We therefore take it that questions of procedure and the question of the jurisdiction of the city clerk are waived. We will therefore proceed to determine the primary question, that is, whether or not the petition is sufficient.

Protestant's proposition No. 1 is as follows:

"Where there is a provision contained in a city charter, providing a method for its amendment or substitution, there is no authority for its repeal, and the manner and method prescribed in the charter is exclusive."

The principal authority relied upon in support of the proposition is the case of Foster v. Young, 149 Okla. 19, 299 P. 162, wherein it was held that where a city charter provides by its terms for the amendment thereof and the procedure therefor, there is no authority for the repeal of such a charter, and any change must be by way of an amendment thereto, and that such an amendment may be made by providing for the adoption of the laws of the state of Oklahoma for cities of that class. The charter of the city of Cleveland provides for the initiation of amendments to the charter and substitutes therefor, but contains no express provision relating to the repeal thereof. It is pointed out that article 18 of the Constitution, providing for the adoption of charters, makes no provision for the repeal thereof. The initiative and referendum provisions of article 5 of the Constitution and sections 5887 and 6429, O. S. 1931, make provisions for such repeal. Section 6429, O. S. 1931, 11 Okla. St. Ann. § 561, provides in part as follows:

"The charter so ratified may be amended, revoked or abolished by proposals therefor submitted by the legislative authority of said city to the qualified electors thereof to be voted for at any general or special election or said proposals to amend, revoke or abolish such charter, may be submitted by a petition signed by a number of qualified electors residing within the corporate limits of such city, equal to twenty-five per centum of the total number of votes at the last general or special election held in such municipality, and the proceedings shall be construed liberally in favor of the petitioners. Upon the filing of a petition, signed by the required number of electors, qualified to vote in the proposed election, as the same appears on the face of the petition, with a copy of the proposed amendment, substitution, revocation or repeal of the charter, said executive authority must issue a proclamation calling a special election to ratify or reject such amendments, substitution, revocation or repeal, and such special election shall be held not later than twenty-five days after said petition has

been filed; provided that said amendments, substitution, revocation or repeal, may be submitted to any general election if any to be held in such municipality within thirty days of the filing of said petition, such proposed amendments, substitution, revocation or repeal shall be ratified in such election by a majority of the qualified electors voting thereon."

In the case of Foster v. Young, supra, where repeal was sought, it was held that the statute was not applicable for the reason that the charter involved therein provided for its amendment, which method was exclusive.

The court, in that case, held insufficient an initiative petition submitting an ordinance repealing the charter of the city of Woodward and providing for the calling of an election of councilmen and the mayor and "such other officials as is provided for by the laws of the state of Oklahoma." It was held that to repeal the charter upon the petition submitted would be to leave the city without a form of government in that the statutes of Oklahoma governing cities of that class do not automatically become operative upon the signing of an initiated act by the Governor, and that after the adoption of the petition there would be no one with authority to call an election. As we view it, the rule of law promulgated in the case of Foster v. Young, supra, is not soundly premised, in that the applicable statutes would automatically become effective upon the repeal of the charter.

In the case of Caruth v. State, 101 Okla. 93, 223 P. 186, the court was dealing with the sufficiency of an initiated measure purporting to repeal the charter of Shawnee and adopting a form of city government provided by the laws of the state of Oklahoma. The contentions therein presented were similar to those presented here. With reference to the right of the majority of citizens to repeal the charter, it is said:

"Respondent next argues that when a freeholder's charter has once been adopted, and it has become the organic law of the city, the same may not thereafter be entirely abrogated or repealed. This, if true, would be a singular situation and one that would deprive the people of municipalities of the right of local self-government. If the people of a municipal corporation had the right to frame a charter for their own government, but have no right to repeal such charter, and adopt the statute of the state governing municipal corporations, as their charter or organic law, then they have so securely manacled and shackled themselves that their release cannot be effected except, possibly, with a key furnished by the people of the whole state in the form of a constitutional amendment authorizing such repeal. * * * We consider it axiomatic that the power to create carries with it the power to destroy, particularly where this power has been conferred by the Legislature."

With reference to the statute hereinabove quoted, the court said:

"We express no opinion as to the constitutionality of chapter 161, Sess. Laws 1919 (section 4504, C. S. 1921) (sec. 6429, O. S. 1931); but treating it as valid, as it must be treated in this case, we are unable to say that it is violative of any rights of the electorate, or that it is revolutionary in its character. Its purpose and effect is merely to provide a means, where none already exists, for the repeal of the charter and the adoption, in lieu thereof, of the managerial form of city government, or the adoption of the applicable laws of the state as the organic law of the city. * * *"

It is noted that the court therein expressed the view that the statute expressly authorized the repeal of a charter, and in addition held that the right to repeal such charter was an inherent and fundamental right. After giving full effect to the provisions of a charter, the statute and the fundamental rights of citizens to determine the form of government for their respective municipalities, we are forced to the conclusion that such a charter may be repealed by an initiated measure providing for such repeal, and that it is not necessary that the same be presented in the form of an amendment to such charter.

Protestant's second proposition is as follows:

"The purported petition provides for repeal, and does so without providing for any other form of government, therefore said purported petition is insufficient in form and does not comply with either the charter or statutory provisions, or with the accepted principles of orderly government."

In support of this proposition, the case of Foster v. Young, supra, is likewise relied upon. We have heretofore pointed out that such a rule is premised upon the proposition that the adoption of a provision repealing a charter would leave a municipality without any form of government in that the repeal of the charter abolishes all offices under it and there would be no one with authority to call an election for the purpose of filling such offices. This premise overlooks the provision of article 6, sec. 13, of the Constitution, providing that when any office shall become vacant the Governor shall, unless otherwise provided by law, appoint a person to fill such vacancy.

Insofar as there is conflict between the views herein expressed and the views expressed in the case of Foster v. Young, supra, that case is specifically overruled.

It is noted that the initiated measure involved herein purported to establish the "aldermanic form of government." For the purpose of this opinion such provision will be treated as surplusage.

We have examined the contentions regarding the insufficiency of the number of signatures on the petition, and find them to be without merit.

It is our view that the petition is sufficient and should be submitted to the electors of the city of Cleveland for approval or rejection, and it is so ordered.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, DAVISON, and DANNER, JJ., concur. HURST, J., not participating. CORN and GIBSON, JJ., absent.