367 P.2d 457

**PROVO CITY et al., Plaintiffs and Appellants,**

v.

**Mark ANDERSON et al., Defendants and Respondents.**

**No. 9583.**

Supreme Court of Utah.

Dec. 29, 1961.

George E. Ballif, George S. Ballif, Provo, for appellants.

Thomas S. Taylor, Provo, for respondents.

WADE, Chief Justice.

Provo City, the Provo City Council, and the individual members thereof, who are the plaintiffs in this action, appeal from a decision holding that the Council-Manager Charter of Provo City is repealable in accordance with an ordinance adopted by Provo City Council under Article XI, Section 5, of the Constitution of Utah,[1] and Article XI, Section 10, of the Council-Manager Charter of Provo,[2] and Title 20,

---

[1] Article XI, Section 5, authorizes the framing and adoption of a city charter by a direct vote of the qualified electors of such city, and that such charter may be amended in the same manner as the charter was adopted.

[2] Article 10–1 of Provo City Council-Manager Charter provides: "Iniative and Referendum—10–1. The people continue to reserve to themselves the powers of initiative and referendum to be exercised in the manner prescribed by general law." Article 11–10 of Provo City Council-Manager Charter provides: "Amending the charter—11–10. Amendments to this charter may be framed and submitted by charter commission in the same manner as provided in the Constitution of Utah for making of charters, or may be proposed by the legislative authority of the city upon a two-thirds vote thereof, or by petition of qualified electors to a number equal to fifteen percent of the total votes cast for mayor on the next preceding election, and any such amendment may be submitted at the next regular municipal election, and having been approved by the majority of the electors voting thereon, shall become part of the charter at the time fixed in such amendment and shall be certified and filed as provided in case of charters."

Chapter 11, U.C.A., 1953.[3] The decision further held that the petition of the defendants and respondents, Mark M. Anderson, F. Orval Singleton, Joseph H. Swapp, George Mayberry, and George I. Steele, complied with all the above constitutional, charter and statutory provisions and the general laws of the state of Utah, and that the steps taken and procedures followed were the proper steps and procedures to effect the repeal of the Council-Manager Charter of Provo. The court also issued a Writ of Mandamus requiring Provo City to place said petition on the November 7, 1961, ballot. Accordingly, the proposed ordinance was placed on the November 7th ballot and adopted by a majority of the Provo City voters in that election. It provided that the Council-Manager Charter be repealed, and that the commission form of government, for which provision is made by law, together with the statutes of the state of Utah applicable thereto, be established, for the government of the city of Provo.[4]

Appellants contend: 1) The ordinance is void because it is in conflict with the municipal elections laws of Utah. 2) The ordinance conflicts with Utah statutes in that it provides for special municipal elections. 3) The provisions of the ordinance are ambiguous and misrepresent the effect of its adoption. 4) The ordinance impairs contractual and vested rights against Provo City which have become effective under the Council-Manager Charter; and 5) the ordinance is void because there is no express constitutional, statutory or charter provision authorizing the repeal of this charter.

■ 1) The ordinance was not rendered void by reason of conflicts with municipal elections laws of this state.

The government of second-class cities under Section 10–6–2, U.C.A.1953, is vested, in a board of commissioners consisting of a mayor and two commissioners, also an auditor, all to be elected at large.

Section 2 of the ordinance adopted by the Provo electorate reads as follows:

"Section 2. That upon the acceptance and approval of this ordinance by the duly qualified electors of Provo City at the election held on November 7, 1961, that a municipal primary election be called for December 5, 1961, for the selection of candidates for offices of a mayor, two commissioners, and an auditor as provided by law and for a special municipal election of December 19, 1961, for the election of said mayor, two commissioners and

---

3. Title 20, Chapter 11, Laws of Utah for 1953, and amendments thereto provides in detail for direct legislation elections.

4. See Title 10, Chapter 6, U.C.A.1953, especially Sections 10–6–2, 5, 6, 7 and 8.

an auditor for the term and the conditions as provided by the laws of the state of Utah."

Section 10–6–7, U.C.A.1953, covering municipal elections and terms of office provides as follows:

"On the Tuesday next following the first Monday in November, 1949 and biennially thereafter there shall be held in each incorporated city and town of this state an election to fill all elective offices to be vacated in such city or town at 12 o'clock noon on the first Monday of January following. Such elected officers shall continue in office for four years, unless otherwise provided.

\* \* \* \* \* \* \*

"In cities of the second class the election and term of office of the officers shall be as follows: In the year 1949 there shall be elected a mayor and one commissioner for a term of four years, and quadrennially thereafter. In the year 1951 there shall be elected an auditor and one commissioner for a term of four years, and quadrennially thereafter."

The foregoing constitutional, statutory and charter provisions contemplate that in cities of the second class the terms of office of the mayor and one commissioner will terminate on the first Monday of January in 1949, and that in 1951, the terms of office of one commissioner and the auditor will terminate on the first Monday in January. Thus the terms of office of these four elective officers would be staggered so that each two years two of such officers' terms would expire, and in the previous November election these offices would be filled. There is no express provision in these statutes which provides for a two-year term which would stagger these offices so that only two officers' terms would expire each two years. But the clear implication of those statutes is that in the first election for a second-class city such would be the case.

In accordance with the above conclusion Provo City Council adopted a resolution which spells out the terms of office for mayor and one commissioner for four years and one commissioner and the auditor for two years, and that two years later the office of the two-year commissioner and auditor shall be filled by election for a four-year term. In the elections which have followed, the foregoing resolutions of the Provo City Commission have been followed. This falls within the pattern apparently contemplated by the legislature in enacting Sections 10–6–2 and 10–6–7, U.C.A.1953, as amended. The mere fact that these statutes do not spell out in detail the method of staggering the election of the city officers does not render void an election which was held

in accordance with the objective of these statutory provisions.

■ 2) The ordinance is not void because no special municipal elections are provided for by statute.

Section 20–1–2, U.C.A.1953, states that a general election is for the purpose of choosing in the proper years "United States senators, representatives in Congress, electors of the president and vice president of the United States, state and district officers, senators and representatives in the legislature, county and precinct officers; or for the purpose of voting upon proposed amendments to the Constitution as provided in Article XXIII of the Constitution or for such other purposes as may be provided by law."

Section 20–1–3 provides that:

"Special elections are such as are held at other times for any purpose required by law, except municipal and school elections."

Plaintiffs argue that municipal and school elections being excepted from the special election provision of the above section, the elections held on December 5th and 19th are void because such elections are not expressly covered by the general election statute. Under the circumstances here present we do not consider this argument meritorious. We conclude that the City Council had authority to call these elections for December 5th and 19th, which they did after the electors had voted to repeal the city Council-Manager Charter.

■ 3) The provisions of the ordinance are not ambiguous and do not misrepresent the effect of its adoption.

The ordinance provides that the ordinance shall not affect, abate, alter, interrupt or interfere with any of the ordinances of Provo City in force and effect at the time of the passing of the ordinance, which are not in violation of the statutes of Utah. It further provides that all offices, departments, and agencies shall continue until expressly provided to the contrary by the duly elected commissioners. It provides for the retention of all offices, employees, and officers of Provo City which are not in conflict with the duly elected officers under the commission form of government, which are not in violation of the statutes of Utah, and until provision is made to the contrary by the officers of the city. It is argued that there are many provisions under the council-manager system now in effect which are contrary to statutory provisions under statutes governing the management of cities of the second class. Also, many voters who voted for the repeal of the council-manager system would not have so voted had they realized the full force and effect of the change back to the statutory provisions governing

cities of the second class. There can be no question that a number of changes will be effected by the revocation of the Council-Manager Charter, the same as there were many changes effected when Provo City was changed from a commission, second-class city form of government to a Council-Manager Charter form of government. No one knows in detail all of the provisions that will be changed or will not be changed by this repeal. That many of the voters will be surprised at some of the changes is quite evident. But this does not mean that there was misrepresentation or that the election was unfair or that the adoption of this change is not fully in accordance with the law on that subject. It is merely the unavoidable result of such a drastic change.

4) The ordinance does not impair or nullify vested rights against Provo City growing out of the operation under the Council-Manager Charter.

No doubt there are many obligations which Provo City has undertaken and agreed to under the Council-Manager Charter, such as public improvements and the like and contracts creating vested rights which are already entered into. Any and all obligations which Provo City had authority to undertake and enter into and assume cannot be impaired merely by repealing the Council-Manager Charter. Such obligations and vested rights accruing thereunder will continue and be in full force and effect the same as they would have been had the charter not been repealed. But, of course, new proposals which have not accrued and not become effective obligations under the Council-Manager Charter form of government in some instances may be adopted by the new form of government; in other instances, such obligations may be invalid under the new form of government, and in others, the commission may choose to adopt other procedures and different obligations. The fact that Provo did adopt and operate under the Council-Manager Charter form of government for a number of years, and then chose to repeal the Charter and readopt the commission form of government will not affect vested rights which have accrued under the Council-Manager form of government, and will not interfere with the power in the future of the commission form of government to adopt what measures the commissioners see fit to adopt.

5) Even though there is no direct or express constitutional, statutory or Council-Manager Charter provision of Provo City that the charter is repealable, the people have an inalienable right to repeal a charter which they had a right to adopt.

Accordingly, Article VI, Section 1 of the Constitution of Utah provides:

"The legal voters or such fractional part thereof as may be provided by law, of any legal subdivision of the State, under such conditions and in such manner and within such time as may be provided by law, may initiate any desired legislation and cause the same to be submitted to a vote of the people of said legal subdivision for approval or rejection, * * *."

Article 10, Section 1 of the Council-Manager Charter of Provo provides:

"10–1. The people continue to reserve to themselves the powers of initiative and referendum to be exercised in the manner prescribed by general law."

Title 20, Chapter 11, U.C.A.1953, provides for direct legislation elections. This chapter covers initiative and referendum and procedure for direct legislation by the people of the state or subdivisions thereof.

The trial court, after examining the petitions and the law in regard to such legislation, found that the petition and the charter-repeal ordinance complied with all of the foregoing provisions of the Constitution, Provo City, Council-Manager Charter, and the statutes of this state regarding the submission of issues to the voters. It, is generally recognized that where the Constitution is silent as to the repeal of a city charter, the electors of such city may by direct vote repeal such charter. The theory being that where the electorate can adopt their own charter, they can also repeal it.[5] So we conclude that this charter was repealable by the vote of the electorate of Provo City, even though we find no direct constitutional, Council-Manager Charter, or statutory provision for such repeal. For it would be a tragedy if the people could one year vote in a charter which they could not repeal, even though the majority of the voters desired to do so, except by initiating a constitutional amendment to make direct provision therefor.

The trial court correctly held that the petition in question to be constitutional and not in conflict with the laws of Utah, and that the procedure used by the sponsors of said petition was correct and lawful. Article I, Section 2, Constitution of Utah provides:

5. See List v. Reick, 187 Okla. 547, 104 P. 2d 248; Blotter v. Farrell, 42 Cal.2d 804, 270 P.2d 481. The following Utah cases suggest the same result, although not directly in point: Plutus Mining Co. v. Orme, 76 Utah 286, 289 P. 132; Ritholz v. City of Salt Lake, 3 Utah 2d 385, 284 P.2d 702; Wadsworth v. Santaquin City, 83 Utah 321, 28 P.2d 161; Salt Lake City v. Tax Comm. of Utah, 11 Utah 2d 359, 359 P.2d 397; Shriver v. Bench, 6 Utah 2d 329, 313 P.2d 475; Cope v. Toronto, 8 Utah 2d 255, 332 P.2d 977. See also McQuillin, Municipal Corporations, 3d Edition, Volume 2, Section 4.05, 9.24, 9.25.

**424**

"All political power is inherent in the people; and all free governments are founded on their authority for their equal protection and benefit, and they have the right to alter or reform their government as the public welfare may require."

We conclude that the decision of the trial court must be affirmed. No costs awarded.

McDONOUGH and CALLISTER, JJ., concur.

CROCKETT, Justice concurs in the result.

HENRIOD, Justice.

I concur for two reasons; 1) Because I believe that where the constitution provides for the initiation of local government but is silent as to whether such local authority can be repealed or changed, it becomes an inherent implied prerogative of the people involved to repeal or change their government under other traditional, constitutional and legislative sanctions; and 2) because it appears that legislation concerning initiative and referendum matters appear to have been followed in this case.

As a gratuitous addendum, this writer suggests that a matter of such import as that found here well might be presented to this Court in an earlier procedural manner not involving an eleventh-hour appeal, which is not conducive to an exhaustive consideration and research, and which is not subject to haste that could lead to added future problems.